779 So.2d 927 (2000)
STATE of Louisiana
v.
Gene Allen RICHARD, II.
No. CR99-1078.
Court of Appeal of Louisiana, Third Circuit.
December 27, 2000.
*928 Earl Taylor, District Attorney, Twenty-seventh Judicial District, Opelousas, LA, Counsel for State/Appellee.
Jason W. Robideaux, Lafayette, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge DOUCET, Judge WOODARD, and Judge SULLIVAN.
WOODARD, Judge.
On November 25, 1997, the State charged Gene Allen Richard, II, by bill of information, with committing simple kidnapping and carnal knowledge of a juvenile, L.M.E., thus, violating La.R.S. 14:45(A)(2) and 14:80(A)(1), respectively. He was twenty-seven years old at the time of the offenses. The victim was twelve years old. On January 5, 1999, he entered an Alford[1] plea to a lesser charge, indecent behavior with a juvenile, a La.R.S. 14:81 violation. On March 12, after considering the pre-sentence investigation report and Mr. Richard's plea arrangement with the State, the trial court sentenced him to serve two years in the parish jail in a work-release program, monitored by the St. Landry Parish Sheriffs Department. The court further ordered that he pay $10.00 per day as an administrative fee for the work-release program and gave him a thirty-day "grace period" to get his affairs in order before reporting to jail.
On March 16, 1999, after an incident between Mr. Richard and the victim's family, in which he challenged the victim's father to a fight, the trial court revoked the grace period and the work-release sentence provision, ordered his apprehension, and that he begin serving his sentence. Through new counsel, on March 18, 1999, Mr. Richard filed a motion to reconsider his sentence. The State filed no motion or opposition. After hearing arguments, the court re-sentenced him to seven years at hard labor.
By counsel, Mr. Richard asserts that the trial court erred when it increased his sentence from two years in the parish jail, with a work-release provision, to seven years at hard labor, as he had already begun serving his parish jail sentence.
In his pro se assignments of error, he contends that: (1) he was not properly Boykinized in accordance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); (2) although a first offender, he received the maximum sentence with there being no aggravating circumstances involved in the crime at issue; and (3) in the event that he successfully obtains reversal of his conviction, he seeks recusal of the trial judge because he avers that the trial judge displayed a vindictiveness towards him at the April 9, 1999 hearing on motion to reconsider.
*929 In an unpublished opinion, bearing the same docket number 99-1078, this court vacated the guilty plea in an opinion dated February 9, 2000. We held that the lower court's mass Boykinization was improper because La.Code Crim.P. art. 556.1 requires the court to address each defendant personally. In that opinion, as the court's decision was based upon Mr. Richard's first pro se assignment of error, we did not discuss the remaining assignments.
Subsequently, the supreme court granted the State's writ, reversed this court's ruling, and remanded the case for further consideration. According to the supreme court, the collective Boykinization was proper under the circumstances.[2]

* * * * *

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the record's face. There is one.
Mr. Richard pled guilty to indecent behavior with a juvenile, a crime that is not responsive to carnal knowledge of a juvenile. Although the State originally charged him with simple kidnapping and carnal knowledge of a juvenile, the State dismissed the simple kidnapping charge, based on his plea, and reduced the offense of carnal knowledge to indecent behavior with a juvenile. Since indecent behavior with a juvenile requires proof that a defendant intended to arouse or gratify the sexual desires of either person, but carnal knowledge of a juvenile does not, indecent behavior with a juvenile is not responsive to carnal knowledge of a juvenile.[3] According to this court in State v. Price,[4] the State should have amended the bill of information to reflect the Defendant's plea to the nonresponsive offense, which the State did not do in the instant case. However, later, in State v. Rito,[5] this court stated that, neither a statute, nor the constitution required the prosecution to amend the bill of information before a defendant can plead guilty to a nonresponsive crime. The court stated:
It is well settled that a defendant may plead guilty to a crime nonresponsive to the original indictment as long as the district attorney accepts it. La.Code Crim.P. art. 487(B) and State v. Price, 461 So.2d 503 (La.App. 3 Cir.1984). Further, the state is not constitutionally or statutorily required to amend the information before the defendant can plead to a nonresponsive offense. Price, 461 So.2d 503 (Knoll, J., dissenting).[6]
Nevertheless, the court went on to decide whether the state's failure to amend the bill of information was harmless or reversible error. The court found the first circuit's opinion in State v. Barclay,[7] to be dispositive of the issue. Discussing Barclay, the court stated:
In that case, the defendant was charged by grand jury indictment with aggravated rape but pled guilty to conspiracy to commit aggravated rape. The court espoused the following harmless error principle to uphold the conviction and sentence despite the state's failure to formally amend the bill of information:
[W]here ... the defendant enters a plea of guilty to a crime nonresponsive to the original indictment when such plea is acceptable to the district attorney, the defendant is fully aware of the charge to which he pleaded as shown by extensive Boykinization, and the plea is not prejudicial to the defendant, *930 any error caused by a failure to formally amend the indictment is harmless.[8]
All of the Barclay considerations have been satisfied in this case. First, the State accepted Mr. Richard's plea. Second, the trial court thoroughly Boykinized him, even though some of the responses were group responses. Third, the trial court informed him of the elements of indecent behavior with a juvenile, as well as the minimum and maximum penalty for that offense.
Finally, Mr. Richard benefitted, substantially, from his plea. The State originally charged him with the simple kidnapping and carnal knowledge of a juvenile. Simple kidnapping carries a penalty of up to $5,000.00 and imprisonment with or without hard labor for not more than five years, or both.[9] Carnal knowledge of a juvenile carries a penalty of imprisonment with or without hard labor for not more than ten years. As stated in the plea agreement, the State dismissed the charge of simple kidnapping and reduced the carnal knowledge of a juvenile charge to indecent behavior with a juvenile, carrying a less severe penalty.[10] For the foregoing reasons, Mr. Richard did not suffer any prejudice by the State's failure to amend the bill of information, and any such error is harmless.
In Rito, the court distinguished State v. Cook,[11] which found reversible error in the state's failure to amend the bill of information. This court stated:
We are able to distinguish the Supreme Court case from the instant case because in the former case, the nonresponsive crime to which that defendant pled (simple burglary of an inhabited dwelling) was more serious than the offense he was originally charged with (simple burglary). As a result, the Supreme Court found a flaw, justifying reversal in that case. In contrast, the crime that defendant pled guilty to in this case was less serious than that originally charged with, and the resulting sentence imposed was more favorable to the defendant in this instance.[12]
Likewise, the present case is distinguishable from Cook. We consider the error harmless.

SENTENCE INCREASE
In his sole assignment of error, Mr. Richard's counsel alleges that the trial court lacked legal authority to increase his sentence from two to seven years. He contends that the court improperly amended it upwards after its execution, relying on La.Code Crim.P. art. 881(A) and (B):
A. Although the sentence imposed is legal in every respect, the court may amend or change the sentence, within the legal limits of its discretion, prior to the beginning of execution of the sentence.
B. (1) After commencement of execution of sentence, in felony cases in which the defendant has been sentenced to imprisonment without hard labor and in misdemeanor cases, the sentencing judge may reduce the sentence or may amend the sentence to place the defendant on supervised probation. Should the court consider any motion amending or changing the sentence imposed, either prior to or after execution of the sentence, the district attorney shall be notified and, if such motion is filed by the defendant, it shall be tried contradictorily with the district attorney, unless the district attorney waives such contradictory hearing.
(2) Such motions include but are not limited to motions for a new trial, motions. *931 in arrest of judgment, motions for amendment, modification, or reconsideration of sentence, and motions for modification of conditions of probation or termination of probation.
(3) If a sentence is reduced or amended, a copy of the minute entry reflecting the judgment reducing or amending the sentence shall be furnished to the district attorney and the arresting law enforcement agency.
Defense counsel also cites State v. Guajardo[13]:
The language of Article 881 itself indicates that the execution of a sentence does not commence with its imposition, since the article contemplates a period of time after its imposition during which the trial judge may amend the sentence. Furthermore, our law fixes the day after imposition as the point of commencement of a hard labor sentence. La.R.S. 15:566.2.
The cited statute, La.R.S. 15:566.2, states:
Whenever a prisoner is sentenced to imprisonment in the state penitentiary, and has not been released on bail or perfected a suspensive appeal, such sentence shall be considered as commencing on the day following the day on which such prisoner is sentenced without regard to the actual date of incarceration in the state penitentiary.
In the present case, his counsel argues that his two-year sentence began on March 16, 1999, when he was picked up and jailed in St. Landry Parish. Thus, when the court increased his sentence on April 9, it was an improper "amendment" twenty-four days after execution of his sentence's commencement.
The State argues that Guajardo, decided in 1983, and article 881 are not controlling, since La.Code Crim.P. art. 881.1 took effect in 1992. That article reads, in pertinent part:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.

(Emphasis added).
Moreover, the State argues that Guajardo itself shows that, by making a motion to reconsider his sentence, a defendant invites the sentencing court to re-evaluate the original sentence. Further, the State contends that new evidence, relevant to the sentencing, came to light at the hearing on the motion. In short, the State alleges that Mr. Richard committed a fraud when he lied about his work status. In the original sentence, the sole reason that he received a "grace period" for reporting to jail, and work-release, was his representation that he needed to work to support his children. By the time the court resentenced him, it became evident that, in truth, he was on disability income and, thus, not a viable workforce candidate.
Indeed, our review of the record shows that at the original sentencing, Mr. Richard's familial obligations weighed heavily in the sentence. Clearly, the district court was under the impression that he needed to work in order to support his children. However, as the court admitted during the re-sentencing hearing, his disability status was available in the original pre-sentence investigation (PSI) report. Apparently, the court missed or forgot that part of the PSI and was swayed by a telephone call from an otherwise unidentified "Mr. *932 Wiltz," who represented that Mr. Richard worked to support his children.
The State's position is correct that the lower court could alter the sentence after the State had incarcerated Mr. Richard. La.Code Crim.P. art. 881.1 forms an exception to the older and more general rule contained in article 881. Mr. Richard titled his motion "Motion To Reconsider Sentence PURSUANT TO C. CR. P. ART. 881.1." Thus, the trial court obviously relied upon this article, which allows for modification regardless of the execution of a sentence, provided the motion is filed timely. Article 881.1 became effective on January 31, 1992. That same year, one of our sister circuits examined its purpose:
Article 881.1, also part of the implementing legislation for the Felony Sentencing Guidelines, has two purposes. First, by requiring a defendant to bring to the sentencing court's attention the specific grounds for any errors that may have occurred in sentencing, the trial judge has the opportunity to change or correct the sentence. Second, it gives the trial judge the flexibility to change a felony sentence after the defendant has begun to serve his sentence. The trial court has the authority to set a longer period of time than the 30 days set out in the article for the filing of the motion to reconsider, thus allowing the trial judge to signal his possible willingness to reconsider the sentence after a period of incarceration in excess of 30 days. Such reconsideration may be based on factors such as behavior in prison, cooperation with the state in other criminal matters, or any other factors the sentencing judge might consider relevant to reduce the sentence imposed. Here, defense counsel chose to assert his motion for reconsideration orally at the time sentence was imposed.[14]
(Emphasis added).
Thus, plainly, the article's language gives courts the authority to alter unexecuted sentences, as long as the reconsideration motion is timely filed. At this point in the discussion, article 881.1 represents a legislative expansion of the trial courts' authority in the sentencing process. It is a vehicle which allows either the state, or the defendant, to ask for a review of sentences, even after the sentences have been executed.
In the case sub judice, one of the motion's alleged grounds was that the court considered (undelineated) "factually incorrect findings" in the PSI, although the questioned findings were not specified. Actually, the opposite was true; Mr. Richard benefitted from the court's factually incorrect impression that he needed to work, even though the fact of his disability was correctly noted in the PSI. Having employed article 881.1 to obtain review of the original sentence, he should not now be heard to complain of the result. His own motion took the lower court's review beyond the jurisdictional confines of article 881, and the same motion asked for review of the PSI.
Similar reasoning appears in State v. Davis,[15]
The allegations of Mrs. Davis's post-arrest criminal conduct, which she denied and which the court stated it would not consider at the first sentencing, were proved, rather than rebutted, at the second sentencing hearing. By asking the court to reconsider the exercise of its sentencing discretion, Mrs. Davis undertook the risk that additional evidence of aggravating as well as mitigating circumstances would come to light. Her continued involvement with PCP after her arrest, as well as her lack of truthfulness about that conduct, were legitimate sentencing considerations that objectively justified the increased sentence *933 and overcame any presumption of vindictiveness.[16]
(Citations omitted.)
In a previous case, this circuit addressed the matter of a defendant whose own motion to reconsider led to an increased sentence.[17] The Hidalgo court discussed the well-known re-sentencing restrictions of North Carolina v. Pearce:[18]
The United States Supreme Court has held that there is no absolute constitutional bar to the imposition of a more severe sentence on retrial. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." Williams v. New York, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 [ (1949) ].

Id. at 723, 89 S.Ct. at 2079.
Despite concluding that there was no absolute constitutional bar to the imposition of a harsher sentence, the court recognized that due process dictates that a defendant should not be punished for having been successful in getting his conviction set aside. Id. In order to prevent such retaliation by the trial court, the Court held that the reason for a more severe sentence must affirmatively appear in the record. Id. Thus, a trial judge is well within his authority to alter a sentence as long as he provides justification in the record for such an upward deviation.
Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Id. at 726, 89 S.Ct. at 2081.
In Wasman v. United States, 468 U.S. 559, 568, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984), the Supreme Court further explained Pearce by stating:
If it was not clear from the Court's holding in Pearce, it is clear from our subsequent cases applying Pearce that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights.[19]
In the case sub judice, the lower court stated at re-sentencing:

THE COURT: All right, thank you, Mr. Robideaux. The Court will make a couple of observations with regards to your comments. First things first, the Court does acknowledge that it did in fact have the information regarding his Social Security Disability in the pre-sentence report, however, as previously indicated, the information which I received with regards to work was a last minute type of thing, did not give me the opportunity to go back and check the information against something that may or may not have been in the pre-sentence report. The Court will also note for the record that on that criminal Friday I had twenty-five pre-sentence reports that had been prepared, had been reviewed and that were scheduled for sentencing. I think that we did about twenty of them, there's no way in the world *934 that I could have memorized every one of these pre-sentence reports and memorized every detail from them. The additional observation, and I think more importantly, has to do with regards to I guess the question of "am I punishing the defendant for what Mr. Wiltz did" and that answer is absolutely not, I'm not punishing him for what Mr. Wiltz did, I'm only trying to put the punishment where it was going to be absent Mr. Wiltz's existence. My intention was to sentence this man to seven years at hard labor. That's what my notes reflect, that's what has been introduced into the record. But for the phone call from Mr. Wiltz that's what he would have gotten. Everything else has nothing to do with the seven years so to speak. But for Mr. Wiltz, he would have gotten the seven years. I'm going to simply put that back into place because that is what my intention was. Now, that of course, brings me to the jurisprudence that you referred to, certainly the Court is aware of the fact that it cannot be retaliatory, that it cannot be vindictive, and I would surely hope that as long as I have this black robe on my back that I don't do something with that in mind. And I know that counsel is not accusing me of doing that, I don't for the moment. I know counsel is trying to make up his record, trying to protect the rights of his client and I expect him to do that, he's already done that to the fullest extent of the law. I certainly expect him to either make these arguments before the Third Circuit and it's understood that this is something that he has to do, he has to do his job and my experience with Mr. Robideaux is that he does his job very well. But as I say, I am not doing this as a vindictive matter, I'm doing it because that was my initial judgment in this case and that judgment simply did not get into the record because of a phone call that I received a day or two days before sentencing. The Court will at this time vacate the previous sentence imposed in this matter and will now sentence the defendant as it initially intended to do. He will be sentenced to seven years at hard labor. The Court is going to advise the defendant of the fact that he's got three years to seek post-conviction relief in this matter. I know Mr. Robideaux is familiar with these forms, I'm going to present to him a form which I'm going to ask that Mr. Robideaux and his client sign. About the only thing that this form does is simply advise him of the fact that he has three years to seek post-conviction relief. It gives a little additional information with regards to that. I suspect that he signed one of these when he did the initial two years. In this further connection, the Court is going to deny the defendant's motion for bond, he will be remanded to the Department to begin serving his sentence. The Court is going to grant the defendant's request for an appeal in this matter which is I think one of the motions that had been filed herein. Mr. Robideaux can you think of any other motions that you might have filed that I have failed to consider in this matter.
(Emphasis added).
Thus, the lower court adequately addressed the possible vindictiveness issue. These comments, combined with the overall record of the re-sentencing, support the conclusion that the court did not vindictively increase the sentence. Also, the court entered into the record a copy of its original sentencing notes, which confirms that the court was originally going to sentence Mr. Richard to seven years at hard labor. The numeral seven is crossed out and an arrow points to the note "2 yrs. P.J." At the close of the original sentencing, the court stated, "you came within an inch of getting about six years at hard labor[.]" Thus, the record reveals that the court issued its original, relatively lenient, sentence on the basis of faulty information. When presented with the appropriate facts, it properly considered them in reconsidering *935 the sentence. Additionally, the court had before it the fact that Mr. Richard had harassed the victim's family. In fact, the court, itself, issued subpoenas and took extensive testimony on the incident in which Mr. Richard tried to start a fight with the victim's father. Thus, the trial court properly sentenced him.

SENTENCING GUIDELINES
Mr. Richard combines two pro se assignments, arguing that the lower court failed to adhere to the "sentencing guidelines;" also, that it failed to give adequate reasons for the sentence. Although the current version of La.Code Crim. P. art. 894.1 contains sentencing guidelines, Mr. Richard clearly refers to the, now, defunct Louisiana Sentencing Guidelines, as shown by his citation of State v. Kennedy.[20]
First, the Sentencing Guidelines have been repealed. Second, the lower court did specify reasons for the new sentence. La.Code Crim.P. art. 894.1(C) requires the court to state, for the record, the considerations taken into account in deciding the sentence to impose. Furthermore, it must state the factual basis for the sentence. Above, we quoted the court's detailed and thoughtful explanation of its reasons for sentencing, and this quote forms only a part of the reasons which it discussed.
In summary, Mr. Richard pled guilty to indecent behavior with a juvenile, received the benefit of a generous plea bargain, and received a comparatively lenient sentence, based upon false information which had been given to the judge, shortly before the resentencing, on Mr. Richard's behalf. Within days, free only because the court thought that he had to work to support his family, Mr. Richard belligerently confronted the juvenile victim's parents. Thus, the lower court had objective, and more than ample, reasons for increasing the sentence.
Mr. Richard attempts to press his argument of judicial vindictiveness, but as we discussed above, there is no evidence that the lower court acted vindictively, or was he punished for merely making a motion to reconsider his sentence. On the contrary, the evidence demonstrates the falsity of this speculation.
Mr. Richard also claims that the lower court erred by imposing the maximum sentence of seven years at hard labor without citing sufficient aggravating circumstances. As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. The sentencing court is charged with reviewing the circumstances surrounding the offense and should impose a sentence fitting the defendant's conduct. However, it is well-settled that sentences should not be overturned absent an abuse of the trial court's broad sentencing discretion. The appropriateness of the sentence is not a relevant issue.[21]
Considering the trial court's lengthy sentencing reasons, given the legal standards discussed above, the court did not abuse its discretion in sentencing Mr. Richard to seven years hard labor.

THE JUDGE
In his final pro se assignment, Mr. Richard asks that, in the event of remand or reversal, he not be brought back in front of the same judge. Again, he supports this contention by arguing that the court was vindictive towards him. La.Code Crim.P. art. 881.4(B) states:
In the interest of justice, the appellate court may remand the case for resentencing before a judge other than the judge who imposed the initial sentence.
However, "in the interest of justice," we have found no reason in the record to warrant a change. Specifically, Mr. Richard has failed to show any vindictiveness or retaliatory motive on the trial court's *936 part. Furthermore, we found no cases on point and note that the jurisprudence on this provision is rather limited. In the case law, 881.4(B) has been employed when trial courts failed or refused to comply with higher courts' orders regarding re-sentencing. The present case presents no such situation.
Accordingly, we deny the request.

CONCLUSION
We affirm Mr. Richard's guilty plea and sentence.
AFFIRMED.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] State v. Richard, 00-659 (La.9/29/00); 769 So.2d 1177.
[3] See La.Code Crim.P. arts. 814 and 815.
[4] 461 So.2d 503 (La.App. 3 Cir.1984), appeal after remand, 517 So.2d 858 (La.App. 3 Cir. 1987).
[5] 96-1444 (La.App. 3 Cir. 10/8/97); 700 So.2d 1169.
[6] Id. at 1170.
[7] 591 So.2d 1178 (La.App. 1 Cir.1991), writ denied, 595 So.2d 653 (La.1992).
[8] Rito, 700 So.2d at 1170-71.
[9] La.R.S. 14:45(B).
[10] La.R.S. 14:80(C).
[11] 372 So.2d 1202 (La.1979).
[12] Rito, 700 So.2d at 1171.
[13] 428 So.2d 468, 470 (La.1983).
[14] State v. Barnes, 607 So.2d 872, 874 (La. App. 2 Cir.1992).
[15] 552 So.2d 524 (La.App. 2 Cir.1989).
[16] Id. at 527.
[17] State v. Hidalgo, 96-403 (La.App. 3 Cir. 11/6/96); 684 So.2d 26.
[18] 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
[19] Hidalgo, 684 So.2d at 31.
[20] 93-776 (La.App. 5 Cir. 1/25/94); 631 So.2d 1195.
[21] State v. Cook, 95-2784 (La.5/31/96); 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).