# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 04-897 consolidated with 04-898

**STATE OF L0UISIANA**

**VERSUS**

**KEVIN THERIOT**

**************
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT, NO. 02-923/02-1543
PARISH OF IBERIA
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

**AFFIRMED AND REMANDED.**

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and J. David Painter, Judges.

Edward K. Bauman
Louisiana Appellate Project
P.O. Box 1641
Lake Charles, Louisiana 70602
(337) 491-0570
COUNSEL FOR APPELLANT:
    Kevin Theriot

Walter J. Senette, Jr.
Assistant District Attorney
St. Mary Parish Courthouse
Franklin, Louisiana 70538
(337) 828-4100, Ext. 550
COUNSEL FOR APPELLEE:
    State of Louisiana

**COOKS, Judge.**

## STATEMENT OF THE CASE

On June 27, 2002, the Defendant, Kevin Theriot, was charged by a bill of information with production and manufacture of a schedule II controlled dangerous substance, namely methamphetamine, in violation of La.R.S. 40:967(A)(1); theft of goods over $500.00, in violation of La.R.S. 14:67; possession of a schedule IV controlled dangerous substance, namely diazepam, in violation of La.R.S. 40:969(C); and reckless handling of hazardous materials, in violation of La.R.S. 32:1518. The Defendant was arraigned on July 7, 2002 and entered pleas of not guilty to the charges.

On October 1, 2002, the Defendant was charged by a bill of information with conspiracy to produce and manufacture a schedule II controlled dangerous substance, namely methamphetamine, in violation of La.R.S. 40:967(A)(1) and La.R.S. 14:26 and with reckless handling of hazardous materials, in violation of La.R.S. 32:1518. The Defendant entered pleas of not guilty to the charges.

On February 5, 2004, the Defendant changed his pleas of not guilty to pleas of guilty pursuant to a plea bargain with the State. The State agreed to dismiss the charges of theft, possession of diazepam and reckless handling of hazardous materials from the first bill of information and agreed to dismiss the charge of reckless handling of hazardous materials from the second bill of information. Pursuant to the plea bargain, the Defendant pled guilty to two counts of attempted production and manufacture of methamphetamine.[1]

On March 26, 2004, the Defendant was sentenced to fourteen years at hard labor on each count with all but seven years suspended with each sentence to run

---

[1]The bill of information was never amended to show the charges to which the Defendant actually pled; however, see the error patent section for further discussion.

2

concurrently with the other sentence. The trial court further ordered the Defendant be placed on three years probation with the following specific conditions: (1) he report to his probation officer within ten days of his release from prison; (2) he pay $60.00 per month supervision fee, a fine of $5,000.00 and the cost of prosecution in the amount of $250.00; (3) he will not use any alcohol or drugs during the time of his probation; and (4) he not frequent any bar or casino during the period of his probation. At sentencing, the Defendant's trial counsel made an oral motion to reconsider the sentence, which was denied.

The pleas and sentencing under each lower court docket number were conducted jointly in the lower court and were part of the same plea agreement. The two appeals lodged with this court were consolidated. The Defendant is now before this court alleging the sentence imposed was excessive. For the reasons assigned below, we affirm the sentence of the Defendant but remand for the trial court to establish a payment plan for the fine and costs ordered as conditions of probation.

## STATEMENT OF THE FACTS

The facts indicate the Defendant, Kevin Theriot, was a truck driver employed by Lynn Romero. He began using methamphetamine, and when the habit became too expensive, he began stealing from farmers for the purpose of manufacturing the drug. The Louisiana State Police obtained information from area farmers they were being burglarized at night and their anhydrous ammonia tanks were being tapped for anhydrous ammonia. The officers conducted surveillance and noticed that there was a light near the anhydrous ammonia tank of a farm. When they approached the scene, the Defendant along with Corey Duhon, fled. The Defendant was subsequently located and was found to be in possession of a rubber hose and a propane tank used in the theft. The Defendant's residence was subsequently searched, where the

3

officers located additional items used in the manufacture and processing of methamphetamine. He was arrested and mirandized and confessed to the thefts and to manufacturing methamphetamine.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find the following errors. First, in docket number 04-898, the Defendant pled guilty to a nonresponsive offense. The Defendant was originally charged with conspiracy to produce and manufacture methamphetamine and pled guilty to attempted manufacturing of methamphetamine. According to La.Code Crim.P. art. 814(A)(57), the only responsive verdicts to a charge of conspiracy to violate any provision of the uniform controlled dangerous substances law are guilty and not guilty. Thus, attempted manufacturing of methamphetamine is not a responsive offense to conspiracy to manufacture methamphetamine. At the guilty plea proceeding, the trial court stated that the bill of information would be amended to attempted manufacturing of methamphetamine. The bill of information contained in the record, however, does not indicate that the charge of conspiracy to produce and manufacture methamphetamine was amended to attempted manufacturing of methamphetamine. Thus, the Defendant pled guilty to a crime that was not responsive to the offense charged in the bill of information.

This court was faced with a similar issue in *State v. Collins*, 03-388 (La.App. 3 Cir. 10/8/03), 865 So.2d 117. This court addressed the issue as follows:

> In *State v. Charles*, 02-0443 (La.App. 3 Cir. 10/2/02), 827 So.2d 553, *writ denied*, 02-2707 (La.3/28/03), 840 So.2d 569, the defendant was charged with distribution of cocaine, but pled guilty to an amended charge of possession with the intent to distribute cocaine, which this court found was a nonresponsive offense. *See also State v. Starks*, 615 So.2d 943 (La.App. 1 Cir.1993). Defendant, thus, pled guilty to a

4

nonresponsive offense; and this court found it was an error for the State not to amend the bill of information. *See* La.Code Crim.P. art. 814.

In *State v. Richard*, 99-1078 (La.App. 3 Cir. 12/27/00), 779 So.2d 927, this court recognized as error patent the defendant's plea to a nonresponsive crime. In addressing the error, we stated:

> According to this court in *State v. Price*, [461 So.2d 503 (La.App. 3 Cir.1984)] the State should have amended the bill of information to reflect the Defendant's plea to the nonresponsive offense, which the State did not do in the instant case. However, later, in *State v. Rito*, [96-1444 (La.App. 3 Cir. 10/8/97), 700 So.2d 1169] this court stated that, neither a statute, nor the constitution required the prosecution to amend the bill of information before a defendant can plead guilty to a nonresponsive crime. The court stated:
>
>> It is well settled that a defendant may plead guilty to a crime nonresponsive to the original indictment as long as the district attorney accepts it. La.Code Crim.P. art. 487(B) and *State v. Price*, 461 So.2d 503 (La.App. 3 Cir.1984). Further, the state is not constitutionally or statutorily required to amend the information before the defendant can plead to a nonresponsive offense. *Price*, 461 So.2d 503 (Knoll, J., dissenting).
>
> Nevertheless, the court went on to decide whether the state's failure to amend the bill of information was harmless or reversible error. The court found the first circuit's opinion in *State v. Barclay*, [591 So.2d 1178 (La.App. 1 Cir.1991), *writ denied*, 595 So.2d 653 (La.1992)] to be dispositive of the issue. Discussing *Barclay*, the court stated:
>
>> In that case, the defendant was charged by grand jury indictment with aggravated rape but pled guilty to conspiracy to commit aggravated rape. The court espoused the following harmless error principle to uphold the conviction and sentence despite the state's failure to formally amend the bill of information:
>>
>>> [W]here ... the defendant enters a plea of guilty to a crime nonresponsive to the original indictment when such plea is acceptable to the district attorney, the defendant is fully aware

5

of the charge to which he pleaded as shown by extensive Boykinization, and the plea is not prejudicial to the defendant, any error caused by a failure to formally amend the indictment is harmless.

. . . .

In *Rito*, the court distinguished *State v. Cook*, [372 So.2d 1202 (La.1979)] which found reversible error in the state's failure to amend the bill of information. This court stated:

We are able to distinguish the Supreme Court case from the instant case because in the former case, the nonresponsive crime to which that defendant pled (simple burglary of an inhabited dwelling) was more serious than the offense he was originally charged with (simple burglary). As a result, the Supreme Court found a flaw, justifying reversal in that case. In contrast, the crime that defendant pled guilty to in this case was less serious than that originally charged with, and the resulting sentence imposed was more favorable to the defendant in this instance.

*Id.* at 929-930 (Footnotes omitted).

Possession with the intent to distribute cocaine and distribution of cocaine are contained in the same statute and carry the same penalty. Our examination of the record reveals the *Barclay* factors were met. The State accepted Defendant's plea, and thoroughly *Boykinized* Defendant. The trial court stated Defendant was pleading guilty to distribution of cocaine and explained the nature of that offense as well as its penalty range. When asked if he understood what he was pleading guilty to and the penalty range, Defendant replied "Yes, sir." Defendant also benefitted from his plea in that one charge was dismissed, no habitual offender bill was filed and at least one-half of his sentence was to run concurrent with a sentence he was then serving. He also received a mid-range sentence of sixteen years. Facing the possibility of a $50,000.00 fine, he was ordered to pay only $1,500.00. Thus, Defendant clearly was not prejudiced and the error is harmless.

*Id.* at pp. 118-120.

Likewise, in this case, we find any error resulting from the Defendant's plea to a nonresponsive offense is harmless. The plea was acceptable to the district attorney, and the record indicates the Defendant was extensively Boykinized and advised of the penalty range for the crimes to which he was pleading. The trial court

6

explained that the original charge of conspiracy to manufacture was going to be amended to attempted manufacturing of methamphetamine, and the Defendant stated that he understood that fact. The Defendant also stated he understood what attempt meant after the trial court explained the elements of attempt. Additionally, the Defendant was not prejudiced by the plea in that he faced the same term of imprisonment for attempted manufacturing of methamphetamine as he would have for the originally charged offense. The Defendant benefitted from the entire plea agreement in that other charges were dismissed and the trial court agreed to order the Defendant's sentences to run concurrently. Thus, we find any error is harmless.

Second, the trial court failed to establish a payment plan for the $5,000.00 fine and court costs ordered as a condition of probation as well as the $250.00 cost of prosecution ordered as a condition of probation. This court has found error patent when the trial court fails to establish a payment plan for fees ordered as conditions of probation. *See State v. Reynolds*, 99-1847 (La.App. 3 Cir. 6/7/00), 772 So.2d 128; *State v. Fontenot*, 01-0540 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255. We find the case must be remanded, and the trial court is instructed to establish a payment plan for the fine and costs ordered as conditions of probation.

Third, the minutes of sentencing are in need of correction. The minutes indicate that one of the counts to which the Defendant pled was "Attempted Conspiracy to Produce & Manufacture Schedule II." The Defendant did not plead guilty to an "attempted conspiracy." Rather, he pled guilty to two counts of attempted manufacturing of methamphetamine. Thus, the minutes of sentencing should be amended accordingly.

**ASSIGNMENT OF ERROR NUMBER ONE**

7

As his sole assignment of error, the Defendant claims that the trial court erred in imposing a constitutionally excessive sentence. The record indicates the Defendant did not file a Motion to Reconsider Sentence as required by La.Code Crim.P. art. 881.1. Under Article 881.1, a defendant must file a motion to reconsider the sentence setting forth the specific grounds upon which the motion is based in order to raise an excessive sentence claim on appeal. *State v. Mims*, 619 So.2d 1059 (La.1993). In the present case, the Defendant merely stated at sentencing, "Your Honor, we'd move for reconsideration of sentence." With regard to oral objections to sentencing, this court has held:

> In cases where courts have held that an oral objection alone is sufficient to preserve the issue for review, the oral objection contained the basis for the motion, such as excessiveness of sentence. *See State v. Caldwell*, 620 So.2d 859 (La.1993); *State v. Trahan*, 98-1442 (La.App. 4 Cir. 12/1/99), 752 So.2d 921. [*State v. Trahan* was reversed on other grounds. *See State v. Trahan*, 99-3470 (La.10/5/01), 797 So.2d 38.] Therefore, since Defendant's oral motion did not set forth any specific grounds to support his claim of excessive sentences, we are relegated to a bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993), *after remand*, 626 So.2d 856 (La.App. 2 Cir.1993), *writ denied*, 93-2933 (La.2/11/94), 634 So.2d 373.

*State v. Barling*, 00-1241, p. 11 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1041-42, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

Since the Defendant did not allege any specific ground for excessiveness, we will conduct a bare excessive sentence review.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse

8

of discretion. *State v. Etienne*, 99-192 [, p.5] (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 [, p. 3] (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*Barling*, 779 So.2d at 1042-43.

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-0562 (La. 5/30/03), 845 So.2d 1061.

The Defendant pled guilty to two counts of attempted production and manufacture of methamphetamine and was sentenced to fourteen years at hard labor on each count to run concurrently, all but seven years was suspended, and the Defendant was placed on three years probation with special conditions. When sentencing the Defendant, the trial court stated:

> All right. I have the criminal records check which was done by Probation and Parole. I've reviewed that and considered that. I'd like to file it in the record.

> And the court has considered the following things with reference to the sentencing of Mr. Theriot.

> In this first bill of information, he was charged with offenses in April 2002. Those offenses included four offenses: production and

manufacture of methamphetamine; theft from Rebel Farms; possession of a controlled dangerous substance, Diazepam; reckless handling of hazardous materials. Subsequently, he was charged in a bill of information, on - of acts of June 15, 2002, wherein he conspired to produce and manufacture methamphetamine and reckless handling of hazardous materials.

Mr. Theriot is 39 years of age, is a mature adult, and cannot use youth or inexperience as an excuse for committing these crimes.

In the plea agreement for the April 2002 charges, he received a reduction of charges from production and manufacture of methamphetamine to attempted production and manufacture of methamphetamine. This resulted in substantial benefit to him. It reduced his sentencing exposure from a maximum of 30 years to a maximum of fifteen years. So he's already received the benefit of a possible reduction of fifteen years of sentence. The other three charges, theft of Rebel Farms, possession of Diazepam, and reckless handling of hazardous materials, were dismissed. He's received the benefit of that.

For the June 15, 2002 charge of conspiracy to produce and manufacture methamphetamine, the plea bargain reduced that to attempted production and manufacture of methamphetamine. He received the benefit of exposure reduced from 30 years maximum to fifteen years maximum. Obviously, he's received a substantial benefit already in that plea bargain.

In the April 2002 charges, Mr. Theriot was stopped when he was driving an eighteen-wheeler by the sheriff's office. He was found to be in possession of several boxes of pseudophedadrine, which is a substance used to make methamphetamine. He gave consent to search his residence, where the officers located additional items used in the manufacturing and processing of methamphetamine. After being Mirandized, he admitted he was in fact manufacturing and selling methamphetamine and he was stealing anhydrous ammonia from farmers for the purpose of manufacturing methamphetamine.

In the June 2002 incident, agents of the Louisiana State Police were given information by certain farmers that they were being burglarized at night and their anhydrous ammonia tanks were being tapped for anhydrous ammonia. The officers conducted surveillance and saw a light near the anhydrous ammonia tank on a farm. They moved in, and Mr. Theriot along with another person fled from the scene on four-wheelers. Later Mr. Theriot was located and found to be in possession of a rubber hose and a propane tank which he was trying to utilize to steal anhydrous ammonia for the manufacture of methamphetamine.

These facts were stated at Mr. Theriot's plea, and he admitted that all of this was true.

10

We are responsible as individuals and as citizens for what we do. Most people - most people sitting here today and most people in our communities don't commit crimes. Most people to not manufacture a dangerous drug. Most people do not sell drugs. People choose to be criminals, choose to commit crimes. They choose to commit crimes because either they find that they enjoy the excitement, they like the money, or they get high with the danger. And then when they're caught, after they decide to be criminals and get involved in criminal activities, they don't want to be responsible for what they do. That's only natural. Nobody wants to go to jail. Nobody wants to be responsible for their bad acts. But as a society, we have a law of rules. If we didn't have those rules, you wouldn't be able to walk out of this courthouse; everybody would be standing there trying to sell you drugs and sell them to your kids. And everybody in society would be addicted to drugs, and everybody would be harmed by it.

We need to consider also when we consider the sentence for someone involved in manufacturing and selling dangerous drugs such as methamphetamine of all the harm that Mr. Theriot has caused to the individuals that he sold the drugs to. Of course, those people have decided to be criminals too, or they are addicted and they can't help themselves. But at any rate, he had brought them drugs, and a substantial amount of suffering has been undergone by those people who are addicted to drugs and their families because they get drugs or got drugs from Mr. Theriot to feed their addiction so that they couldn't support their family and that they were engaged in criminal activities. So you can see that it does not involve just Mr. Theriot and his immediate family. The community is seriously affected by people who manufacture and sell drugs.

In Mr. Theriot's case additionally, he didn't need to be involved in drug activities for the money, because he had a great job. He made substantial money. So why he chose to - you know, I can understand - we can all understand how people get addicted to drugs. And addiction is, we know today, a sickness and a weakness and it's biological, it's physiological. It affects your brain, it affects your body. It's not just something that you can control. So people do get addicted, and we understand that and we try to help people get treated for that. But far away from being addicted to drugs are the people who manufacture the drugs and sell the drugs to all of these poor people who are addicted. And there's no reason for somebody, even if they're addicted to drugs, to have to sell drugs to other people in the community and to have to establish an operation for the production of drugs in our community. And the  reason we are serious about it and the reason there are serious consequences to it is because it's a devastation to the people in the community who suffer as a result of the addictions and their families and society, because we have to take care of all those people, we have to treat all those people. They can't work. They have all kind of problems. Their families suffer. So it's not just a small thing; it's a gigantic thing. And today in our society, it's a monumental problem.

11

So I consider those things in this matter as regard to Mr. Theriot as to why I'm going to impose the sentence that I impose.

I also of course take into consideration the fact that he has a wife and a family and that they need him and that they are dependent upon him for support. He knew that before he got in the business of manufacturing and selling drugs. Nobody had to tell him that his family needed him. But he chose instead to go into criminal activity instead of being responsible to his family. And now of course he doesn't want to go to jail so he can take care of his family. But he has put himself in that position. Society didn't put him there. His family didn't put him there. His employer didn't put him there. The district attorney didn't put him there. And I didn't put him there. Mr. Theriot placed himself where he sits today in activities which for no reason that I can comprehend he engaged in, because he had everything he could ask for as a productive member of society. He had a family, he had a good job, he had children. So he didn't need to do what he did except - unless he wanted to be a criminal or liked those kinds of activities.

In addition to those things, of course wherever there are places that are manufacturing methamphetamine, those chemicals are dangerous. It's costing our society a great deal of money and danger to the police officers to have to clean up these lab sites.

In addition to that, many of the victims who use this type of drug suffer injury more than just addiction. They suffer some brain injury, they suffer some bodily injury, because these things cannot be manufactured with the preciseness that drugs should be manufactured. And as a result, many people who take it suffer brain damage, they suffer physical injuries from it. So that's another danger and expense that society has as a result of these activities.

These are the things that I consider today in sentencing Mr. Theriot.

In addition to that, I feel that there is an undue risk that during any period of suspended sentence or probation he would commit another crime. Why do I say that? Because he committed one of these multiple offenses in April and then he committed more multiple offenses in June.

He's in need of correctional treatment which can be best satisfied by incarceration.

A lesser sentence would deprecate the seriousness of these charges.

In considering all these factors, Mr. Theriot, it's the sentence of this court, on each of the two charges that you have pled guilty to, on each one, that you serve fourteen years at hard labor and those sentences to be concurrent. I suspend all but seven years of each of those

sentences and give you credit for time served. Upon your release from jail, you will begin probation. Within ten days of your release from jail, you will report to your probation officer; you'll pay $60 a month supervision fee; you'll pay a fine of $ 5,000 and court costs; you'll pay cost of prosecution in the amount of $250; you will not use any alcohol or drugs, and you will not be in any bar or casino during the period of your probation.

. . . .

Oh, I'm sorry. Probation is three years.

This court has held when the offense to which the defendant pled guilty does not adequately describe his conduct, the trial court may take into consideration the benefit the defendant obtained through the plea bargain. *State v. Williams*, 02-707, (La.App. 3 Cir. 3/5/03), 839 So.2d 1095 (*citing State v. Lanclos*, 419 So.2d 475 (La.1982). This court further stated that the trial court should "particularly make such considerations where the plea bargain results in a significant reduction in the defendant's potential exposure to imprisonment." *Id* at 1101. (*citing State v. Robinson*, 33,921 (La.App. 2 Cir. 11/1/00), 770 So.2d 868); *State v. Waguespack*, 589 So.2d 1079 (La.App. 1 Cir. 1991), *writ denied*, 596 So.2d 209 (La.1992).

In this case the State agreed to dismiss four additional charges including, theft, which carried a maximum penalty of ten years imprisonment; possession of diazepam, which carried a maximum penalty of five years imprisonment; and two counts of reckless handling of hazardous materials which carried maximum sentences of ten years each. The State also agreed to reduce one of the Defendant's charges, resulting in reduction of the sentencing range for one charge by one-half, and agreed to recommend that the sentences run concurrently with one another. Furthermore, although the Defendant received sentences near the maximum length of incarceration, half of this period was suspended, and the Defendant received the benefit of probation. Therefore, we find the Defendant received a great benefit by pleading

13

guilty to the amended charges.  We find the trial court did not abuse its discretion and the sentence is appropriate.

## DECREE

Based on the foregoing review of the record, the Defendant's sentence is affirmed.  The case is remanded and the trial court is instructed to establish a payment plan for the fine and costs ordered as conditions of probation and to amend the minutes of sentencing to correctly reflect the offenses to which the Defendant pled.

**AFFIRMED AND REMANDED.**