981 So.2d 843 (2008)
STATE of Louisiana, Appellee,
v.
Josh COLLINS, III, Appellant.
No. 43,135-KA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*845 Louisiana Appellate Project by G. Paul Marx, Lafayette, for Appellant.
Jerry L. Jones, District Attorney, Charles Brumfield, E. Dion Young, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and MOORE, JJ.
MOORE, J.
Josh Collins, III appeals his concurrent sentences of 99 years and 49½ years at hard labor for his convictions of armed robbery and conspiracy to commit armed robbery. He contends that the district court had no authority to vacate the original sentences of 44 years and 10 years at hard labor, even though it did so pursuant to a motion for reconsideration, and that the 99-year sentence is constitutionally excessive. We affirm.

Factual Background
Carla Slack and Christy Fife were working at Butch's Texaco station and convenience store, north of Bastrop on U.S. Hwy. 425, on the evening of November 4, 2002. Near closing time, two men entered wearing dark clothes and ski masks. One of the men came to the counter, threw up a gun at Ms. Slack and demanded, "Where's the money?" Ms. Slack thought it was a joke until the armed man jumped the counter, shoved her to the floor and repeatedly shouted, "Where's the money?" The second robber walked around the counter and screamed at the armed man, "Shoot! Shoot!" At gunpoint, Ms. Slack crawled toward the store's bank bag and pointed to it. The armed man grabbed it, and both men fled the store. Ms. Slack testified that the bag contained about $6,500 cash, plus a rent check for $150 made out to the store's owner, Butch Larche.
Ms. Slack could not describe the robbers, but Ms. Fife, who had been at the other end of the counter when the incident began, told deputies that both were black men, and the one wielding the gun was somewhat smaller and lighter-skinned than the other. She described the weapon as a square machine gun with a round barrel.
Before Ms. Slack phoned to report the robbery, a sheriff's sergeant driving south on U.S. Hwy. 425 saw a dark, small truck, perhaps an S-10 or a small Chevy Blazer, parked on the side of the road and facing north. When he heard about the robbery, he immediately relayed the truck's description to other officers.
Minutes later, Deputy Odell Stone noticed a dark blue Ford Ranger headed north on La. Hwy. 142. Seeing that it was occupied by two black men, he stopped the truck. The driver was the defendant, Josh Collins, and the passenger was Marcus Battle. Deputy Stone verified that Battle had an outstanding warrant from Bastrop, so he placed Battle under arrest. Deputy Quentin Mewborn, who came to assist in the stop, asked Collins if he would come to the sheriff's office and answer questions; *846 Collins agreed. Neither Collins nor Battle admitted anything about the robbery. A brief search of the extremely cluttered truck, under darkness and heavy rain, yielded no evidence of the crime.
Two days later, however, Battle waived his Miranda rights and gave a statement incriminating both him and Collins in the robbery. At trial he testified that they had driven around most of the day, first looking for jobs and then drinking beer and playing pool at a club. They went to a pawn shop and bought bullets for Collins's Tec 9 handgun, which looks like a small machine gun. After a preliminary stop at Butch's for beer and cigarettes, they then went to Family Dollar to buy sweater caps; Collins cut eye holes in these, and gave Battle gloves to wear. They then returned to Butch's to "hit a lick." Collins entered the store first, held the gun to the cashier's head and carried the bank bag to the truck. Battle added that as they drove away, they tossed the gloves, caps and gun out the window.
Deputy Derrick Quillar testified that using Battle's information, he located clothing strewn alongside Hwy. 425; the gun was not found. Deputy Terry Wyatt obtained a search warrant for Collins's truck, and after a thorough search he found $180 in $20 bills hidden in a heater vent under the dash, and a $150 check made out to Butch Larche. Collins declined to make a statement, but told Dep. Wyatt that with the proper consideration from the DA, the rest of the money could probably be located, although it was more like "a couple of thousand," not the $6,500 reported missing.

Procedural History
As noted, Collins was charged by bill of information with armed robbery and conspiracy to commit armed robbery. The matter proceeded to jury trial in June 2006.
Judge Dennis Waldron of the Parish of Orleans District Court, Criminal Division, was appointed by the supreme court to serve pro tempore and assist in the Fourth JDC for six months, commencing in January 2006. Judge Waldron presided over the instant trial because Judge Stephens Winters, who received the original assignment, was ill. After a two-day trial, the 12-member jury found Collins guilty as charged on both counts.
By the time of sentencing on August 10, 2006, Judge Waldron's appointment had ended and Judge Winters had long since returned to the bench. Collins objected to being sentenced by any judge other than the one who heard the trial. Judge Winters noted the objection, and then conducted a full sentence hearing, utilizing the presentence investigation report ("PSI") ordered by Judge Waldron. Judge Winters imposed concurrent terms of 44 years and 10 years at hard labor without benefits.
Collins filed a motion to reconsider, urging that the sentence was excessive and reiterating his objection to being sentenced by Judge Winters. At a hearing on October 5, 2006, Judge Winters recognized that Judge Waldron's pro tem appointment allowed him to handle any ongoing matters or unfinished business. He then questioned Collins and trial counsel, Mr. Spires, to see if they truly wanted the court to vacate the sentence and Judge Waldron to impose a new sentence; both affirmatively requested this. Judge Winters granted the motion, ordered the sentencing transcript sealed, and directed the attorneys and court personnel not to communicate to Judge Waldron about the prior sentence.
At the second sentence hearing on October 18, 2006, Judge Waldron confirmed he was unaware of the prior sentence. He *847 acknowledged letters from Collins's wife and other family members, and the contents of the PSI. He recapped the facts of the offense, noting the large economic loss to the business and the severe psychological effects on at least one of the female cashiers. He noted Collins's serious criminal history, with two prior felony convictions for offenses involving armed robbery and theft, prison sentences totaling 13 years, and a possible detainer for another felony in Arkansas. Judge Waldron sentenced Collins to 99 years at hard labor for the armed robbery and 49½ years at hard labor for the conspiracy, to run concurrently and with credit for time served. Collins filed an application for post conviction relief, which the district court converted to an out-of-time appeal.

Discussion: Illegal Vacation of Sentence
By his first assignment of error, Collins urges the district court could not vacate his sentence to allow a different judge to impose sentence after execution began. In support, he cites La. C. Cr. P. art. 881 A, which permits the court to amend or change the sentence "prior to the beginning of execution of the sentence." He also cites State v. Harris, 93-1098 (La.1/5/96), 665 So.2d 1164, for the theory that Judge Winters's original sentence was a final judgment and no other judge in the district has the power to impose a different sentence. He submits that only the governor has this power. La. Const. Art. IV, § 5(E); State v. Dick, 2006-2223 (La.1/26/07), 951 So.2d 124. Further, the patent illegality of the second sentence negated the fact that he explicitly requested this very relief. Finally, he contends that under La. C. Cr. P. art. 881 B(1), the court may amend a felony sentence only to "reduce the sentence or * * * amend the sentence to place the defendant on supervised probation."
The state responds that the procedure was entirely valid under La. C. Cr. P. art. 881.1 C; when the defendant files a timely motion to reconsider, the court "may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence." The state submits that the specific procedure of Art. 881.1 preempts the general provisions of Art. 881. Finally, Collins persisted in his request to vacate the original sentence and receive a new sentence, even fully aware that the latter would be unaffected by the former; he should not be permitted to repudiate the relief he so adamantly sought.
Collins correctly shows that although the sentence imposed is legal in every respect, "the court may amend or change the sentence, within the legal limits of its discretion, prior to the beginning of execution of the sentence." La. C. Cr. P. art. 881 A. The court has no authority to amend a hard labor sentence once the defendant has begun serving it. State v. Wimberly, 32,984 (La.App. 2 Cir. 7/29/99), 760 So.2d 355. Nevertheless, Art. 881.1 authorizes the motion to reconsider sentence, with a special provision in Paragraph C:
If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
This clearly allows the trial court to impose a new sentence even after the execution of the original sentence, regardless of the general prohibition against this in Art. 881 A. State v. Richard, 99-1078 (La. App. 3 Cir. 12/27/00), 779 So.2d 927; State v. Sholar, 35,047 (La.App. 2 Cir. 10/31/01), 801 So.2d 534. Collins's contention to the contrary lacks merit.
*848 The citation to State v. Harris, supra, is equally unavailing. Harris held that the district judge may correct an illegally lenient sentence by making the necessary change in the court minutes and forwarding the change to the defendant and prison authorities, without having to bring the defendant to court. In that narrow context, the court stated, "In all cases, a district judge retains the discretion to vacate the sentence originally imposed and to resentence the inmate in open court." Harris obviously applies only to (a) correcting an illegally lenient sentence and (b) opting to make such a correction without physically transporting the defendant to court. Neither is present here, and the quoted passage in no way deprived Judge Winters of the right to grant the motion to reconsider.
In fact, Judge Winters was honoring the traditional rule that no substitution or replacement after verdict should be permitted "except under unavoidable circumstances, such as sickness, impossibility to act, or other substantial cause which would make the continuation of the trial judge's presence impossible." State v. Henderson, 243 La. 233, 142 So.2d 407 (1962), cert. denied, 371 U.S. 942, 83 S.Ct. 324, 9 L.Ed.2d 276 (1962).
Finally, we find no merit in the contention, based on Art. 881 B(1), that Judge Winters had the authority only to reduce the sentence or place Collins on supervised probation. The first sentence of that paragraph states:
B. (1) After commencement of execution of sentence, in felony cases in which the defendant has been sentenced to imprisonment without hard labor and in misdemeanor cases, the sentencing judge may reduce the sentence or may amend the sentence to place the defendant on supervised probation.
Because Judge Winters did not sentence Collins to imprisonment without hard labor, this provision is plainly inapplicable. In short, Collins has not shown us, and we are not aware of, any statute that prohibited Judge Waldron from sentencing him again, as requested.
We are sensitive to Collins's core complaint that error must have occurred because Judge Waldron imposed a much heavier sentence than Judge Winters. It is unusual for the district court to grant the defendant's motion to reconsider and for the result to be a longer sentence. However, there is absolutely no evidence of vindictiveness that would violate due process. State v. Richard, supra; State v. Williams, XXXX-XXXX (La.11/28/01), pp. 9-10, 800 So.2d 790, 798. Before granting the motion, Judge Winters fully advised Collins and trial counsel of the risk involved, and took reasonable measures to insulate Judge Waldron from the prior sentencing considerations. Collins pursued the motion knowingly and willingly. He is not entitled to relief from the situation that he created. See State v. Ormond, 00-1371 (La.App. 5 Cir. 4/24/01), 786 So.2d 187.
This assignment of error lacks merit.

Excessive Sentence
By his second assignment, Collins urges the 99-year sentence was constitutionally excessive. He argues that the state relied on a codefendant who had every reason to minimize his own role in the offense and falsely depict Collins as the leader. He also urges that if Judge Winters found 44 years at hard labor to be an appropriate sentence, it is a plain abuse of discretion for Judge Waldron to impose 99 years.
The state responds that Judge Waldron fully complied with the guidelines of La. C. Cr. P. art. 894.1, assigning proper weight to the gravity of the offense, Collins's *849 criminal record, and the fact that he was on parole when he committed the instant robbery. Citing the jurisprudence on proportionality, e.g. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1, the state concludes that the 99-year sentence is "reasonable and expected rather than excessive."
Appellate review of sentences for alleged excessiveness is a two-pronged inquiry. First the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1 by establishing a factual basis for the sentence. Collins concedes in brief that his motion to reconsider alleged only excessiveness, no factual errors in the sentencing process, and that his appeal is limited to the second prong, constitutional review. State v. Mims, 93-0808 (La.6/18/03), 619 So.2d 1059; State v. Montgomery, 42,432 (La.App. 2 Cir. 9/19/07), 966 So.2d 127. We would note, nevertheless, that Judge Waldon conducted a thorough and exemplary sentencing hearing, discussing all the relevant factors in Art. 894.1. This was not an automatic or reflexive imposition of the maximum sentence.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 92-3120 (La.9/10/93), 623 So.2d 1276; State v. Smith, supra. A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. The sentencing court has broad discretion to sentence within the statutory limits; absent a showing of manifest abuse of that discretion, the appellate court will not disturb a legal sentence. Id.; State v. Smith, supra. The relevant question is not whether another sentence might have been more appropriate but whether the sentencing court abused its broad discretion. State v. Smith, supra.
Armed robbery carries a sentence of not less than 10 years and not more than 99 years at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64 B. Conspiracy to commit armed robbery carries not more than 49½ years at hard labor without benefits. La. R.S. 14:26 C, 14:64 B. Collins received the maximum on both counts.
Before sentencing, Judge Waldon noted Collins's prior convictions for armed robbery and aggravated assault in Oklahoma, a federal conviction for interstate transportation of a stolen vehicle, and prior arrests for a stolen check and armed robbery in Arkansas (with a possible detainer). The PSI disclosed that Collins was a third felony offender and on supervised release from the Federal Bureau of Prisons when he committed the instant offense; trial, in fact, was delayed until 2006 because he had to serve 12 months for probation violation. The record fully supports Judge Waldon's finding that robbery and theft are this defendant's modus vivendi and the only reasonable way to curtail his proclivities is a long prison term. We perceive no abuse of discretion.
Collins correctly shows that the key to the state's case was the testimony of coconspirator Marcus Battle, who depicted himself as a reluctant follower and Collins as the gun-wielding mastermind of the scheme. Collins contends that this self-serving testimony lacked credibility for sentencing purposes. We note, however, that Battle's description of the robbery corresponded to the victims', and his statement to Dep. Quillar led to the recovery of *850 the masks and other clothing along Hwy. 425, as well as the $20 bills concealed in Collins's truck. With this level of corroboration, the jury was entitled to accept Battle's account of Collins's leadership in the conspiracy. Moreover, trial counsel, Mr. Spires, fully cross-examined Battle about his own criminal record, including two prior CDS convictions, and exposure for the instant offenses. Battle was steadfast that the state made no promises or inducements for his testimony. Judge Waldron obviously found that Battle's precarious situation prompted him to tell the truth. Again, we perceive no abuse of discretion.
Maximum sentences are typically reserved for the most serious violations of the charged offense and the worst kind of offender. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App. 2 Cir. 2/13/08), 976 So.2d 802. With his criminal record of robbery and theft, Collins qualifies as a worst offender; with the violence of the incident, the emotional trauma to the victims and the financial loss to Butch's, it also qualifies as a most serious violation. On this record we simply cannot say that the maximum sentences were an abuse of Judge Waldron's vast discretion. This assignment lacks merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, the convictions and sentences are affirmed.
AFFIRMED.