390 So.2d 1276 (1980)
STATE of Louisiana
v.
William M. MacDONALD.
Nos. 67378 and 67379.
Supreme Court of Louisiana.
November 10, 1980.
Rehearing Denied December 15, 1980.
*1277 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, W. C. Douglas Friederichsen, Asst. Dist. Attys., for plaintiff-appellee.
Jack Quarles, Jr., Indigent Defender Program, Robert A. Buckley, Keiller & Buckley, for defendant-appellant.
DIXON, Chief Justice.
On May 16, 1979 officers of the Jefferson Parish Sheriff's Office were conducting a *1278 search pursuant to a valid search warrant in a trailer owned by one Kenneth Melton. They arrested several people and seized a quantity of drugs. In the course of the search, the defendant knocked on the door and entered. An agent recognized him as one of the individuals named by the confidential informants as a possessor of Melton's drugs. Another agent frisked the defendant and felt a capsule in the left pocket of this shirt. The agent removed the capsule and identified it as demerol. The defendant was placed under arrest and warned. He was brought to a rear bedroom, and told that the police had information about him and were preparing to execute a search warrant on his trailer also. The defendant then consented to a search of his trailer. A search there turned up several controlled substances-some liquid opium elixir, seconal, amytal, demerol and nembutal.
On June 5, 1979 the defendant was charged with one count of violating R.S. 40:967; on June 13 he was charged with five counts of violating R.S. 40:968. He pleaded not guilty to the charges and filed motions to suppress the evidence and to disclose the identity of the confidential informants. The motions were denied. The defendant then changed his pleas to guilty, reserving his rights to appeal. He was sentenced to five years' imprisonment at hard labor on each bill of information. The two sentences were to run concurrently, with credit given for time served. The defendant now appeals, urging five assignments of error.

Assignments of Error Nos. 1 and 2
Defendant contends that the trial court erred in ruling that he had the burden to proceed at the motion to suppress hearing and in denying his motion to suppress the evidence seized from his pocket and from his trailer.
At the motion to suppress hearing defense counsel asked the court to order the state to proceed, arguing that the burden of proof shifted to the state to demonstrate that the search was reasonable once it was shown that the search was not made pursuant to a search warrant. The court refused and ordered the defense to call its witnesses.
We have previously held that:
"... once the defendant makes the initial showing at a motion to suppress hearing that a warrantless search occurred, the burden of proof shifts to the State to affirmatively show that the search is justified under one of of the narrow exceptions to the rule requiring a search warrant...." State v. Franklin, 353 So.2d 1315, 1318-1319 (La.1977).
The court may have erred in ordering the defense to proceed, but the state successfully carried its burden, and the defendant suffered no substantial prejudice from the procedure used.
Defendant's charge that the evidence should be suppressed because it was illegally seized is more serious. The critical issue here is whether the actions of the law enforcement officers were reasonable. Both the federal constitution (Fourth Amendment) and the Louisiana constitution of 1974 (Article 1, § 5) guarantee the rights of persons to be secure against unreasonable searches and seizures. Evidence which is the product of an unreasonable search or seizure is held inadmissible at court under the exclusionary rule. Generally, a reasonable search is one conducted pursuant to a search warrant based on probable cause. Warrantless searches and seizures are considered unreasonable unless they fall within narrow and well delineated exceptions to the warrant requirement. The burden rests on the state to prove that the search is justified by special circumstances. State v. Franklin, supra; State v. Mitchell, 360 So.2d 189 (La.1978); State v. Dunbar, 356 So.2d 956 (La.1978).
In this case, the police had sufficient articulable knowledge of particular facts to justify their detention and search of the defendant. Confidential informants had told the police that the defendant was "holding" some of Melton's drugs; the defendant was actually named in the search *1279 warrant as a possessor of some of these drugs. The police already had the defendant under investigation and were in the process of getting a search warrant for his trailer. They had reasonable grounds to fear for their safety as there were several people in the trailer who had just been arrested and who were beginning to give them some trouble. The agent who frisked the defendant confined his search to the defendant's outer clothing; while he was conducting the legal search, he felt the capsule in the defendant's pocket. Since he was an experienced narcotics officer, in the environment in which the search occurred, the officer was justified in believing the capsule contained contraband.
Defendant also argues that the search of his trailer was illegal. He contends that his consent to the search was not truly voluntary, but prompted by his concern that the officers would arrest his wife and child if he did not cooperate. He also argues that the consent exploited his illegal arrest. The arrest of the defendant was proper, and, consequently, the consent cannot be considered an exploitation of an illegal arrest. The testimony of the defendant that the police threatened his wife and child with imprisonment if he refused to cooperate was contradicted by the testimony of the policemen. The agents admitted that they told the defendant they were planning to get a search warrant on his trailer, but they denied that they had told the defendant they could get the warrant in five minutes. The defendant could easily have concluded from all the circumstances that it was in his best interest to cooperate. In any event, where there is contradictory testimony at trial, the trial judge's evaluations of credibility are entitled to great weight. State v. Martin, 376 So.2d 300 (La.1979); State v. Dunbar, supra; State v. Tennant, 352 So.2d 629 (La.1977). We believe that a review of all the circumstances leading to the giving of consent indicates that the consent was voluntary. Consequently, the subsequent search of the trailer was legal.
These assignments of error are without merit.

Assignment of Error No. 3
Defendant contests the trial court's refusal to disclose the identity of the confidential informants who supplied the information leading to the search of Melton's trailer and who implicated him in the drug transactions.
The United States Supreme Court in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), has stated that in determining when to disclose, courts must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. Roviaro v. United States, supra, at 353 U.S. 62, 77 S.Ct. 629, 1 L.Ed.2d 646. The privilege must give way where disclosure is relevant and helpful to the defense, or is essential to a fair determination of the cause. Roviaro v. United States, supra, at 353 U.S. 60-61, 77 S.Ct. 628, 1 L.Ed.2d 645. Evidence that the informer set up or participated in the defendant's crime will justify disclosure of his identity. Roviaro, supra; State v. Dotson, 260 La. 471, 256 So.2d 594 (La.1971), cert. denied 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). However, merely supplying information used by police to obtain a search warrant is not in itself an exceptional circumstance justifying disclosure. State v. Dabon, 337 So.2d 502 (La. 1976).
The record in this case indicates that the confidential informants told the police about the drugs but did not participate in the criminal activity. We find no exceptional circumstances to warrant disclosing their identities.
This assignment of error lacks merit.

Assignment of Error No. 4
Defendant contends that he did not get a proper Boykin examination before the court accepted his guilty pleas. He specifically alleges that the trial judge did not explain the specific elements of the offenses with which he was charged, nor the precise limits of the possible sentences. He cites State v. Allen, 263 La. 123, 267 *1280 So.2d 544 (La.1972) and United States v. Perwo, 433 F.2d 1301 (5th Cir. 1970) to support his contentions that an adequate Boykin examination must include a clear explanation of the elements of the crime and of the possible punishments therefor. The cases cited by the defendant are not germane. In Allen, the defendant pleaded guilty to theft but refused to admit that he intended to deprive the owner of his property permanently. In this case, the defendant never made any statement indicating a less than complete understanding of the crime with which he was charged. In Perwo, the court held that the defendant's guilty plea was properly accepted where the defendant was informed of the maximum possible penalty that might be imposed for the offense with which he was charged. The court did not suggest that the defendant had to be told the minimum penalty as well. In the case at bar, the trial judge told the defendant the nature of the offenses with which he was charged and the maximum penalties for the crimes. Both the trial judge and defense counsel explained defendant's constitutional rights to him. He explicitly waived these rights and entered his guilty pleas knowingly and voluntarily. The pleas were part of a plea bargain arrangement; the defendant pleaded guilty to three counts and the state dropped three counts. The plea clearly helped the defendant avoid the risk of a greater penalty. As the United States Supreme Court stated in North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970):
"... That he [the defendant] would not have pleaded [guilty] except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage...."
This assignment of error lacks merit.

Assignment of Error No. 5
Defendant contends that his sentence is excessive and that the trial court did not comply with the requirements of C.Cr.P. 894.1.
Article 1, § 20, La.Const. of 1974, prohibits the imposition of excessive punishment. The excessiveness of a sentence is a question of law reviewable under the appellate jurisdiction of this court. Article 5, § 5(C), La.Const. of 1974. A sentence may be excessive even though it is within statutory limits-either because of its length or because it specifies confinement rather than a less onerous alternative. State v. Sepulvado, 367 So.2d 762 (La.1979). To assist courts in rendering appropriate sentences, the legislature has enacted C.Cr.P. 894.1. This article enumerates three factors justifying a sentence of imprisonment and eleven factors favoring probation or suspension of sentence. It requires the trial judge to state for the record the considerations taken into account and the factual basis therefor in imposing sentence. This statement of reasons is designed to aid this court when it is asked to review a sentence alleged to be excessive. Where the trial judge does not comply with the requirements of article 894.1, this court may vacate the sentence and remand for resentencing. State v. Cox, 369 So.2d 118 (La.1979); State v. Jackson, 360 So.2d 842 (La.1978).
In the case at bar, the trial judge noted that a plea bargain had been arranged in which the state had dropped three counts in exchange for the defendant's plea of guilty to the remaining three. The judge also noted that the defendant had previously been convicted of a felony in California. The sentences he imposed were well within the statutory limits. The violation of R.S. 40:967 could have brought the defendant a punishment of five years' imprisonment at hard labor plus a $5000 fine, while the violations of R.S. 40:968 each carried a maximum sentence of ten years' imprisonment at hard labor with a $15000 fine. The court sentenced the defendant to two five year terms, to run concurrently. *1281 Such a sentence can hardly be characterized as excessive.
This assignment of error is without merit.
The conviction and sentences are affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority opinion, in effect, adopts a construction of the Fourth and Fourteenth Amendments which has been specifically rejected by the Supreme Court. In Ybarra v. Illinois, 444 U.S. 85, 94, 100 S.Ct. 338, 344, 62 L.Ed.2d 238, 247 (1979), the Court was asked to interpret the Constitution "to permit evidence searches of persons who, at the commencement of the search, are on `compact' premises subject to a search warrant, at least where the police have a `reasonable belief' that such persons `are connected with' drug trafficking and `may be concealing and carrying the contraband'" and pointedly refused.
Despite the majority's efforts, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), cannot be stretched to cover the police conduct in this case. "Nothing in Terry can be understood to allow a generalized `cursory search for weapons,' or indeed, any search whatever for anything but weapons. The `narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." Ybarra v. Illinois, supra, 444 U.S. at 94, 100 S.Ct. at 344, 62 L.Ed.2d at 247.