396 So.2d 1288 (1981)
STATE of Louisiana
v.
Daryl P. GALLIANO.
No. 80-K-2615.
Supreme Court of Louisiana.
April 6, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns and Madeline M. Slaughter, Asst. Dist. Attys., for plaintiff-relator.
Ralph S. Whalen, Jr., New Orleans, for defendant-respondent.
BLANCHE, Justice.[*]
*1289 Daryl P. Galliano was charged by bill of information with aggravated burglary and aggravated crime against nature. R.S. 14:60; R.S. 14:89.1. At arraignment, he pleaded guilty as charged to both counts after a colloquy involving the judge, prosecutor, defense attorney and himself. He also signed a written waiver of constitutional rights. After a pre-sentence psychiatric examination, he was sentenced to serve thirty (30) years on the aggravated burglary charge and fifteen (15) years on the crime against nature charge. Two months after sentencing, Galliano, through counsel, filed a written motion to vacate the sentence and plea on the charge of crime against nature.[1] After a hearing, the trial judge who had accepted Galliano's plea and sentenced him vacated the plea and sentence, concurring in counsel's assertion that the plea was not voluntary and intelligent. From this ruling, the state sought a writ of certiorari, which was granted.
The controversy which forms the basis of this case arose during the acceptance of the plea of guilt on the crime against nature charge. The trial judge informed Galliano of the maximum potential penalty but also informed him that there was no minimum sentence which had to be imposed on the charge and that the sentence was subject to suspension. However, the crime with which he was charged was allegedly committed on October 4, 1979, approximately one month after an amendment to the penalty provision of the crime against nature statute.[2] This amendment created a minimum mandatory penalty of three years jail time, to be without benefit of suspension of sentence, probation or parole. Although adverting to the new amendment during the plea colloquy, the judge misstated its content.
At the hearing on the motion to vacate the sentence and withdraw the plea, the judge admitted the mistake in the law cited, determined that he misled Galliano at the time he accepted the guilty plea, and granted the motion.
Code of Criminal Procedure art. 559 provides, in pertinent part, that "[t]he court may permit a plea of guilty to be withdrawn at any time before sentence." In this case, however, the court permitted withdrawal of the plea after sentencing. Thus, it is first necessary to discuss whether article 559 stood as an absolute bar to the judge's actions.
Notwithstanding the language of article 559, this Court has stated that a constitutionally infirm guilty plea may be withdrawn after sentence is imposed in the same manner that any illegal sentence may be attacked, namely, appeal, or writs of certiorari or habeas corpus.[3] C.Cr.P. art. 882; State v. Banks, 383 So.2d 1009 (La. 1980); State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977). The reason for this exception in the context of guilty pleas was to insure that no person was deprived of his liberty merely because he failed to challenge the voluntariness of his plea within the limited period of time between the plea and sentencing.
The vehicle by which Galliano sought to attack his guilty plea was a pleading entitled
"Motion to Vacate Sentence and Withdraw Plea". It alleged, in substance, that the plea was entered at a time when he understood that his sentence could be suspended. Regardless of the motion's caption or style, it requested relief within the lower court's habeas corpus power. In such a case, this Court can construe the pleading to do substantial justice and treat it as a *1290 request for habeas corpus postconviction relief. State v. Banks, supra; State ex rel. Clark v. Marullo, supra. It is in this posture that the propriety of the actions of the trial judge must be viewed.
The remaining problem springs from Galliano's contention at the hearing on his motion that the guilty plea was constitutionally infirm when entered because the mistake as to the minimum sentence prevented him from making a voluntary and intelligent plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).
Because a plea of guilty waives an accused's fundamental right to a jury trial, right to confront his accusers and privilege against self incrimination, due process requires as a prerequisite to its validity that the plea be a voluntary and intelligent relinquishment of known rights. McCarthy v. United States, supra. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. State v. LaFleur, 391 So.2d 445 (La. 1980).
Since the plea colloquy is but an objective method of ascertaining and preserving an accused's state of mind, however, judicial inquiry need not focus solely upon the clarity of the words used. For this reason, a court, when called upon to do so through a recognized procedural vehicle, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. See Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).
The state in brief argues the applicability of state and federal cases in which failure of trial judges to properly or fully inform defendants of particular facts at the time of their pleas were held not to render the underlying pleas of guilty involuntary or unintelligent. State v. MacDonald, 390 So.2d 1276 (La.1980); State v. Langendorfer, 389 So.2d 1271 (La.1980); Turner v. United States, 320 F.Supp. 1204 (E.D.La. 1970). In MacDonald, this Court hinted that the failure of a trial court to inform a defendant of a minimum sentence does not require the reversal of a plea if the plea contains a record waiver of constitutional rights. In Langendorfer, this Court allowed the use of an out of state guilty plea to multiple bill a defendant even though the predicate plea colloquy contained a misstatement of law as to the maximum penalty. And in Turner, the district court determined that a guilty plea was not involuntary merely because the defendant was not informed that he could have received a more lenient sentence than the maximum permitted by law.
Regardless of the results of these particular cases, they do not require us to reverse the lower court in the case at bar. In fact, the courts were actively engaging in the subjective analysis of which we now speak. In Turner, the judge ruled that the guilty plea was voluntary and intelligent after considering the objective evidence in the record as well as later testimony taken at an evidentiary hearing on the voluntariness issue. In MacDonald and Langendorfer, this Court likewise looked beyond the record waiver of constitutional rights in order to determine voluntariness and intelligence from the totality of the record before it. In MacDonald this included a review of a plea bargain arrangement and in Langendorfer this included a review of testimony taken at the multiple offender hearing.
In the case at bar, the transcript of the plea colloquy contains an unambiguous explanation by the judge to Galliano concerning the privilege against self incrimination, the right to a jury trial, and the right to confront his accusers, and the effect of a guilty plea upon them. Galliano responded affirmatively to each question concerning his awareness and understanding of these rights. Thus, the record contains objective evidence of a voluntary and intelligent waiver of known constitutional rights.
On the other hand, the colloquy also contains statements in support of Galliano's claim on the motion to withdraw the plea. *1291 The judge informed Galliano that he had discussed the case in chambers with Galliano's attorney, and had decided to forego a presentence investigation but to order a psychiatric examination upon entry of the plea. This, when coupled with the belief on the part of all persons involved in the colloquy that a suspended sentence on the crime against nature charge[4] was available, supports Galliano's claim that the plea was entered on that charge primarily because of the possibility of a suspended sentence upon the issuance of a favorable psychiatric examination.
At the hearing on the motion to withdraw the plea, the judge who had accepted the plea made a determination that he misled Galliano when taking the plea. Since he was in the best position to determine the initial voluntariness and intelligence of the plea and the effect of the mistake upon Galliano, we decline to upset his determination. See State v. Muller, 351 So.2d 143 (La.1977).
In light of the facts presented in this case, the writ issued to review the ruling of the lower court was improvidently granted and is hereby recalled.
GARRISON, J., ad hoc, dissented.
NOTES
[*] Judges Jim Garrison, Lawrence Chehardy and Denis A. Barry of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Associate Justices, Calogero, Marcus, Blanche and Lemmon.
[1] The written motion in the record only dealt with the crime against nature charge. At the hearing on the motion, counsel for the defendant argued that there was error as to both pleas. However, the motion, even if properly before the court, was orally withdrawn as to the burglary charge.
[2] Acts 1979, No. 125, § 1. The amendment became effective on September 7, 1979. See La.Const. Art. 3, § 19.
[3] Because of the time at which this case arose, we need not consider the recent enactment of C.Cr.P. art. 924 et seq. or amendment of C.Cr.P. art. 351 et seq.
[4] A suspended sentence was possible on the aggravated burglary charge. C.Cr.P. art. 893.