NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-538

STATE OF LOUISIANA

VERSUS

JULIEANNE PERALES

A/K/A JULIANNE PERALES

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 21-2450
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

D. KENT SAVOIE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

CONVICTIONS AFFIRMED; SENTENCES VACATED;
REMANDED FOR RESENTENCING.

**Austin L. Lipsey**
**Assistant District Attorney**
**Bradley R. Burget**
**District Attorney – 7th Judicial District**
**4001 Carter St., Suite 10**
**Vidalia, LA 71373**
**(318) 336-5526**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**Jacob Longman**
**Richard Sprinkle**
**Kathryn Jakuback Burke**
**Longman Jakuback, APLC**
**830 Main Street**
**Baton Rouge, LA 70802**
**(225) 383-3644**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Julianne Perales**

**SAVOIE, Judge.**

On February 23, 2022, Defendant, Julianne Perales, was charged by bill of information with eleven counts of cruelty to juveniles, in violation of La.R.S. 14:93(A)(1). On June 22, 2022, she pled guilty to six counts of cruelty to juveniles. On September 7, 2022, she was sentenced to serve three years at hard labor on each count. The trial court ordered three of the counts to run concurrently with one another, with the remaining three counts to run consecutively.

Defendant filed a Motion to Reconsider Sentence on October 7, 2022, and a Motion to Withdraw Guilty Plea and Set Aside Sentencing on December 27, 2022. Both motions were denied following a hearing. The trial court granted Defendant's Notice of Intent to Appeal and Request to Lodge Record, and Defendant is now before this court asserting five assignments of error.

For the following reasons, Defendant's convictions are affirmed. However, due to an error patent, Defendant's sentences are hereby vacated, and the matter is remanded to the trial court for resentencing.

## FACTS

Before Defendant entered her pleas of guilty to six counts of cruelty to juveniles, the State set forth the following factual basis:

> Your Honor, on or about those dates in question, and particularly in October of 2021, an investigation was opened on Noah's Ark Day Care as a result of a child that was a participant of the daycare coming home with marks on his back. Your Honor, . . . the State Police had removed that investigation from the Sheriff's Office given that the Sheriff's Office had a son that was an attendee of the daycare. Your Honor, after reviewing the -- the video footage, it was learned that Ms. Lysa Richardson, who was the owner of the daycare, Ms. Bridget Delaughter, who was a worker, and then Julie Perales, who was a worker, as well as, a Taylor Ragonesi, who is not here, was a worker at the daycare, all had used excessive and corporal punishment on several of the children that were attendees of the daycare. And were arrested on the various counts of cruelty to a juvenile.

The record reveals that Lysa Richardson, Bridget Delaughter, and Taylor Ragonesi also entered guilty pleas to various counts of cruelty of juveniles.

## **ERRORS PATENT**

Defendant pled guilty to six counts of cruelty to juveniles, violations of La.R.S. 14:93(A)(1). On each count, she was sentenced to three years at hard labor with three of the counts to run concurrently. When asked how the three remaining counts were to run, the trial judge stated, "[d]o not run concurrent." At the hearing on Defendant's motion to reconsider sentence, defense counsel noted that Defendant had been ordered to serve either nine or twelve years, depending on the interpretation of the commitment order. At the hearing on the motion, the trial court stated:

> The Court intended - - there were six counts, I intended to impose three years per count. I intended that three of the counts were to run concurrent. So, I intended to impose a nine-year sentence, and that's what I am continuing to impose, a nine-year sentence.

While the trial court's intent to impose a nine-year combined sentence was clear, running three three-year sentences concurrently and running the remaining three, three-year sentences consecutively results in a combined twelve-year sentence as reflected on the commitment order. Therefore, we find that Defendant's sentences are indeterminate.

Although not directly on point, the following case lends guidance to the issue before us:

> Next, the Defendant received an indeterminate sentence because it is impossible to determine from the record whether the trial judge intended for the sentences for aggravated battery to be served concurrently or consecutively to the armed robbery sentences. La. C.Cr.P. art 879 provides, in part, that "the court shall impose a determinate sentence." In *State v. Sebastien*, 31,750 (La.App. 2nd Cir.3/31/99), 730 So.2d 1040, 1045, *writ denied*, 99–1426 (La.10/29/99), 748 So.2d 1157, the court stated that "the district court . . . is required to express its intent concerning concurrent or consecutive sentences in accordance with La.C.Cr.P. art. 883."

When imposing sentence, the trial judge first sentenced the Defendant on the armed robbery counts and then sentenced the Defendant on the aggravated battery counts. In doing so, he stated that the ten-year aggravated battery sentences, imposed on each of the two counts, were to be served "consecutive to each other." The trial judge did not specify whether the aggravated battery sentences were to be served consecutively or concurrently with the armed robbery sentences. La.C.Cr.P. art.883 directs that in the case of the concurrent sentences, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently. However, we find no such specified date in the sentencing transcript either. Further complicating the matter, the commitment states that all of the sentences are to [be] served consecutively and that the Defendant is to serve a total of 370 years (50 years for 7 armed robberies = 350 + 20 consecutive years for 2 aggravated batteries). While the sentencing transcript clearly does not support this interpretation of the imposed sentence, it is unclear from the transcript exactly what the trial judge intended in imposing sentence. Thus, we find that the Defendant's sentences are indeterminate and, as such, they must be vacated and the case remanded to the trial court for resentencing.

While we readily note the apparent futility in this ruling, because this Defendant will serve the remainder of his natural life in prison, whether defendant's sentence is considered as 370 years of imprisonment, 350 of which are without benefits (all the sentences served consecutively) or 200 years without benefits (consecutive sentences for the four separate armed robberies and concurrent sentences on the remaining related counts) it is a matter of law that the Defendant must have a determinate sentence.

*State v. Peralta*, 01-149, pp. 22–23 (La.App. 5 Cir. 1/15/02), 807 So.2d 967, 978

(footnote omitted), *writ denied*, 02-541 (La. 1/24/03), 836 So.2d 41.

Accordingly, Defendant's sentences are vacated, and the matter is remanded for resentencing.

## ASSIGNMENTS OF ERROR

In Defendant's brief to this court, she sets forth five assignments of error, namely:

1. The trial [c]ourt's ruling was erroneous in its determination that Miss Perales' guilty plea was not entered in violation of her right to effective assistance of counsel, after the [c]ourt was presented with evidence that Miss Perales had been advised that trial counsel was

both engaged in a concurrent conflict of interest and had rendered incorrect advice to Miss Perales to secure her guilty plea.

2. The trial [c]ourt erred in failing to reconsider Miss Perales' sentence after being presented with evidence that trial counsel was ineffective at sentencing.

3. The trial court erred in failing to order Miss Perales' plea be withdrawn after being presented with evidence that trial counsel was ineffective at sentencing.

4. The trial [c]ourt erred in failing to render a particularized sentence for Miss Perales that was based on a consideration of her individual culpability.

5. The trial [c]ourt erred in failing to reasonably tailor a sentence for Miss Perales that considered the mitigating information presented by her new counsel.

However, the argument section of Defendant's brief is not divided by the assignments of error. Rather, it is divided into two primary arguments: (1) that her guilty pleas were a result of ineffective assistance of counsel; and (2) that her sentences are constitutionally excessive as a result of ineffective assistance of counsel. Due to the interconnected nature of the arguments presented in Defendant's brief, we address the assignments of error together.

*Ineffective Assistance of Counsel - Guilty Pleas*

We will first address Defendant's arguments pertaining to the withdrawal of her guilty pleas. The standard of reviewing the trial court's denial of a motion to withdraw a guilty plea is as follows:

The discretion to allow the withdrawal of a guilty plea under La. C. Cr. P. art. 559(A) lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. *State v. Martin*, 48,045 (La. App. 2 Cir. 05/15/13), 115 So.3d 750. A defendant has no absolute right to withdraw a guilty plea. *Id.*

Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. C. Cr. P. art. 556.1 also provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the

4

charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Cooper*, 52,408 (La. App. 2 Cir. 11/08/18), 261 So.3d 975; *State v. Martin, supra.*

An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. *Boykin, supra*; *State v. Johnson*, 51,430 (La. App. 2 Cir. 07/05/17), 224 So.3d 505; *State v. Kennedy*, 42,850 (La. App. 2 Cir. 01/09/08), 974 So.2d 203. A plea of guilty normally waives all nonjurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. *State v. Crosby*, 338 So.2d 584 (La. 1976); *State v. Johnson, supra*; *State v. Stephan*, 38,612 (La. App. 2 Cir. 08/18/04), 880 So.2d 201. A validly entered guilty plea, or plea of *nolo contendere*, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction. *State v. Bourgeois*, 406 So.2d 550 (La. 1981); *State v. Cooper, supra*; *State v. Hardy*, 39,233 (La. App. 2 Cir. 01/26/05), 892 So.2d 710.

When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the *Boykinization* and consider all relevant factors. *State v. Griffin*, 535 So.2d 1143 (La. App. 2 Cir. 1988); *State v. Green*, 468 So.2d 1344 (La. App. 1 Cir. 1984); *State v. Banks*, 457 So.2d 1264 (La. App. 1 Cir. 1985). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *State v. Lewis*, 421 So.2d 224 (La. 1982); *State v. Galliano*, 396 So.2d 1288 (La. 1981); *State v. Griffin, supra*.

In order to properly exercise its discretion and in order for the appellate court to review the exercise of that discretion, the trial court should conduct a hearing or inquiry on defendant's motion to withdraw a guilty plea. *State v. Lewis, supra*; *State v. Griffin, supra*. Reasons supporting withdrawal of the plea would ordinarily include factors bearing on whether the guilty plea was voluntarily and intelligently made, such as breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. *Id.*

5

*State v. McGarr*, 52,641, 52,642, pp. 10–12 (La.App. 2 Cir. 4/10/19), 268 So.3d 1189, 1196–97.

On June 22, 2022, prior to Defendant pleading guilty to six counts of cruelty to juveniles, the trial court addressed Defendant in accordance with the mandates set forth in La.Code Crim.P. art. 556.1. Defendant denied being under the influence of any type of drugs or alcohol, and she denied having any physical, mental, or emotional problems that would prohibit her from understanding the plea proceeding. The trial court thereafter found Defendant competent to proceed with her plea. Regarding her representation, Defendant was questioned as follows:

**THE COURT:**

All right. Ms. Perales, are you satisfied with the services that you received from your attorney, Mr. Colbert?

**MS. PERALES:**

Yes, ma'am.

**THE COURT:**

Did you and he -- well, have you and he had adequate time to fully discuss your case?

**MS. PERALES:**

Yes, ma'am.

**THE COURT:**

Did you and he discuss all the evidence [t]he State had against you?

**MS. PERALES:**

Yes, ma'am.

The trial court explained the nature of the charges and the minimum and maximum sentence Defendant could receive. Defendant said she understood the

elements of the crime of cruelty to juveniles. The trial court asked Defendant if she read and reviewed the plea form with her attorney, and Defendant answered affirmatively. Defendant again said she understood that she could be sentenced to twenty years on each count. The trial court informed Defendant of her *Boykin* rights, and Defendant indicated that she understood those rights.[1] The trial court told Defendant that by pleading guilty, she was giving up certain rights, including the right not to plead guilty and have a trial by jury, the right to have a bench trial, the requirement that the State had the burden of proving her guilt beyond a reasonable doubt, the right to confront her accusers, the right to subpoena witnesses to testify at her trial, the right to testify at her trial, the privilege against self-incrimination, and the right to appeal her convictions if found guilty at trial. Defendant stated that she understood she was giving up each of those rights, and she stated that she had no questions for the court or for her counsel, Mr. Colbert. The trial court found that Defendant's pleas were free and voluntary.

In addition, Mr. Colbert told the trial court that he had adequate discovery opportunities and that the State provided him with open file discovery. Mr. Colbert further indicated that he explained the elements of the crime to Defendant and the evidence against her. When asked if he knew of any promises or inducements that had been made, Mr. Colbert said he did not.

Regarding Defendant's sentencing, the trial court stated:

**THE COURT:**

Because it's my understanding, these ladies are making what we call, an open ended plea. They -- they haven't been guaranteed what their sentence is going to be. I'm going accept their plea. I'm going to order a pre-sentence investigation ["PSI"] and I'm going to set a sentencing date.

---

[1] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

7

**MR. COLBERT:**

That's correct, Your Honor. And it's my understanding that the D.A.'s Office has not made any recommendations. It's strictly up to -- up to the Judge.

The trial court further explained the presentence investigation process:

I'm going to order a pre-sentence investigation. And essentially . . . probation officers will go out. They will get statements from the family of the victims. They will get statements from each of the defendants. They may get statements from the neighbors of the defendants as to what kind of people they are. And, they'll write it all up. They'll present it to me. I'll review it before I sentence the defendants. And, as Mr. Lipsey said, I'm also going to view the video. This is unusual, because usually, a judge doesn't actually get to look at a video of a crime occurring. . . . And I'll review that. And after I've done all that, I'll study it. I'll study the statute. . . . They'll tell me about what, if any, prior criminal history any of these ladies have. And I'll consider that in -- in sentencing. I'll tell you, these ladies, if they have no priors, are not going to get twenty years. You know, we usually do that for folks who've got prior felony convictions, and numerous federal -- felony convictions.

After sentencing, Defendant filed a "Motion to Withdraw Guilty Plea and Set Aside Sentencing" through newly retained counsel. In an attached affidavit, Defendant contended she would not have pled guilty to the charges had she not been promised by her trial counsel that she would receive a probated sentence, because she had recently given birth to her son at the time of her plea and wanted to avoid jail time. Therefore, according to Defendant, her pleas were involuntarily and unintelligently entered.

Defendant further alleged that Mr. Colbert did not advise her of any conflict of representation caused by Mr. Colbert contemporaneously "defend[ing] two of [her] codefendants." Defendant also attached an email sent from her boyfriend, Kyle Bradley, to her newly retained counsel, wherein Mr. Bradley related that every time Defendant met with Mr. Colbert, he told Defendant that she had "nothing to worry about." Mr. Bradley indicated in his email that Mr. Colbert:

8

then asked her if it was okay if he represented one of the other girls involved with the case. She was unsure about it and he told her that her case would be completely separate and would not be together with the other girl. Turned out in the end he was representing 2 of the other girls including Julianne and every time they went to court[,] they were there together at the same time like there [sic] cases were not separate.

Defendant's mother and her boyfriend's mother also wrote letters stating their understanding was that Mr. Colbert told Defendant she would not go to jail.

The trial court held a hearing on the motion on May 31, 2023. Following arguments by defense counsel, the trial court said:

**THE COURT:**

And, Counsel, I disagree with -- when I'm going through and taking her plea, and I'm asking her, were you promised anything. I told her, you know, I couldn't guarantee her what she was going to be sentenced to because I was going to ask for a pre-sentence report. I made that very clear to her.

**MS. WHEAT [DEFENSE COUNSEL]:**

And, Your Honor, I -- I completely understand your position.

**THE COURT:**

So how can she say that she was promised probation when I told her when I took her plea -- there was no mention of probation. I asked her had she been promised anything. Mr. Lipsey, did your office ever discuss probation with her?

**MR. LIPSEY [THE STATE]:**

No, sir (sic). And I actually have an exchange between [t]he Court, myself, and her prior Counsel, Mr. Kevin Colbert, during the -- the plea, when she was pleading guilty to the various six counts, we actually had an exchange discussing that no promises were made by [t]he State. There was no sentencing promise from [t]he Court, that it would be an open ended plea, as you -- as you referred to it as, get the report, and then you would sentence at a later date.

. . . .

**THE COURT:**

9

I think that's a bunch of baloney, Counsel. I think she's grasping for straws. She's trying to put the blame on her Counsel when on the record it says -- I told her, I couldn't promise her anything until I got the report. Now that she's gotten, you know, the sentence, now she wants to make up a story that she was promised probation. I just don't buy that, and your motion is denied.

After the motion was denied, the State asked the trial court if it could take a note of evidence and have Mr. Colbert testify. Mr. Colbert testified that he never promised Defendant that she would receive probation in exchange for her guilty plea. When asked if anyone with the district attorney's office ever made a promise of probation, Mr. Colbert replied: "Absolutely not." Mr. Colbert also said that Defendant's sentence was at the trial court's sole discretion and that the trial court made no promises as to her sentence. Thereafter, defense counsel called Charlie Bradley, Defendant's boyfriend's father, who said it was his understanding that Defendant would receive probation or have to pay a fine in exchange for her guilty pleas.

In *State v. Johnson*, 18-294, pp. 3–6 (La.App. 5 Cir. 1/16/19), 264 So.3d 593, 596–98, *writ denied*, 19-259 (La. 5/28/19), 274 So.3d 561 (footnotes omitted), the fifth circuit considered whether Johnson's claim of ineffective assistance of counsel rendered his guilty plea constitutionally infirm:

> On appeal, defendant asserted three assignments of error: (1) the trial court erred in denying the motion to withdraw guilty pleas; (2) the guilty pleas were not knowingly and voluntary entered into by defendant; and (3) the guilty pleas are legally infirm. In these three related assignments of error, defendant argues his trial counsels' performance was deficient in that they failed to properly investigate this matter. Defendant contends that if they properly investigated, he would have rejected the State's plea offer and proceeded to trial. Defendant claims that his guilty pleas should be invalidated because they were entered without full and correct information, and thus involuntary due to his trial counsels' alleged ineffectiveness. Defendant argues that he has maintained his innocence and that his motion to withdraw guilty plea should have been granted.

. . . A guilty plea is constitutionally infirm if it is not entered freely and voluntarily; if the Boykin colloquy is inadequate; or when a defendant is induced to enter the plea by a plea bargain, or what he justifiably believes was a plea bargain, and that bargain is not kept. State v. McCoil, 05-658 (La. App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124.

As a general rule, a denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows that the defendant was informed of his rights and the consequences of his plea and that the plea was entered voluntarily. [State v.] Kron, 983 So.2d [117,] 120[, writ denied, 08-813 (La. 10/24/08), 992 So.2d 1039]. Dissatisfaction with a sentence or a mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. State v. Green, 03-410 (La. App. 5 Cir. 10/28/03), 860 So.2d 237, 242, writ denied, 03-3228 (La. 3/26/04), 871 So.2d 346. Moreover, where a defendant's misunderstanding of the plea bargain is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. In the absence of fraud, intimidation, or incompetency of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. Joseph, 169 So.3d at 664.

Based on the foregoing, we find the trial court did not error [sic] in denying defendant's motion to withdraw his guilty pleas. The record supports the trial court's determination that defendant voluntarily entered the guilty pleas with a full understanding of the consequences associated with those pleas. On the waiver of rights form and during the colloquy, defendant was advised of his Boykin rights, stated that he understood his rights, and that he was waiving those rights. Defendant was also advised of the sentencing ranges for the offenses and the sentences that would be imposed should the court accept his guilty pleas. Defendant further indicated that he was satisfied with the way his trial attorneys had handled his case and had not been forced, threatened, or coerced into entering his pleas of guilty. The court accepted defendant's pleas of guilty as knowingly, intelligently, freely, and voluntarily entered into by defendant. Defendant was sentenced in accordance with the plea agreement. Accordingly, the plea colloquy, along with the signed waiver of rights form, constitute a sufficient affirmative showing on the record that defendant was advised of his rights, understood those rights, and that he made an intelligent and knowing waiver of his rights.

Moreover, defendant entered an unconditional guilty plea which, by its nature, admits factual guilt and waives all non-jurisdictional defects in the proceedings prior to the entering of the plea. State v. Starks, 01-1078 (La. 3/28/02), 812 So.2d 638, 638-39 (citing Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)

); State v. Crosby, 338 So.2d 584, 586 (La. 1976) (citing State v. Foster, 263 La. 956, 269 So.2d 827 (1972) ); State v. Smith, 09-168 (La. App. 5 Cir. 6/23/09), 19 So.3d 509, 510-11 (citing State v. Joseph, 03-315 (La. 5/16/03), 847 So.2d 1196 (*per curiam* ); State v. King, 99-1348 (La. App. 5 Cir. 5/17/00), 761 So.2d 791, 793, writ denied, 00-1824 (La. 6/29/01), 794 So.2d 822) ).

In this case, defendant does not contend the trial court failed to advise him of his constitutional rights, instead he argues that his pleas were not knowing or voluntary based on ineffective assistance of counsel. Defendant contends his trial counsels' [sic] failed to properly investigate and interview essential witnesses, arguing that after his sentencing, alleged eyewitness Selena Collins recanted her statement to the police implicating him and was prepared to testify accordingly at trial. He argues that at all relevant times he advised his attorneys that he was innocent and insisted on going to trial. However, due to ineffective assistance of counsel, he contends that he was forced to plead guilty. These claims are inconsistent with his response in the Boykin colloquy to the effect that he was satisfied with the way his trial counsel had handled his case, and that he had not been forced, threatened, or coerced into entering his pleas of guilty.

Like the defendant in *Johnson*, Defendant does not contest the sufficiency of the trial court's *Boykin* advisement or her waiver of those rights. Rather, Defendant argues that she was induced to plead guilty based on the ineffective assistance of counsel, who promised that she would receive a probated sentence and who failed to absolve the conflict of interest caused by counsel's representation of Defendant's co-participants. Thus, it must be determined whether counsel was ineffective and, if so, whether his ineffectiveness rendered her guilty pleas unknowing and involuntary.

In *Johnson*, the fifth circuit discussed the applicable law related to a claim of ineffective assistance of counsel as follows:

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. State v. Francois, 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 58, writ denied, 14-431 (La. 09/26/14), 149 So.3d 261. Under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a conviction must be reversed if the

12

defendant proves: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Lyons, 15-2197 (La. 9/23/16), 199 So.3d 1140, 1141.

When a defendant claims that counsels' ineffective assistance rendered a guilty plea invalid, the Strickland analysis under the first deficiency prong remains the same, whereas under the second prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. State v. Ferrera, 16-243 (La. App. 5 Cir. 12/14/16), 208 So.3d 1060, 1066-67. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. at 1067. If, on the other hand, the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings. Id.

In this case, the record is insufficient to fully consider defendant's claim that ineffective assistance of counsel rendered his guilty pleas unknowing and involuntary. The only transcript contained in the record is that of the plea hearing. Thus, based on the limited record, we find defendant's allegations of ineffective assistance of counsel cannot be reviewed here, and should be raised in an application for post-conviction relief in the trial court, where a full evidentiary hearing can be conducted, if warranted under the post-conviction relief statutory procedure, and defendant can present evidence to support his allegations. See State v. Stiller, 16-659 (La. App. 5 Cir. 7/26/17), 225 So.3d 1154; Kron, supra.

Id. at 598–99 (footnotes omitted).

We first address Mr. Colbert's alleged promise of probation. Defendant argues that Mr. Colbert did not file any pretrial motions to investigate her case and, thus, could not have known the strength of the State's case against her. Defendant also argues that Mr. Colbert knew that she wanted to avoid incarceration due to the

13

birth of her son and that he induced her to plead guilty with the promise that she would be sentenced to probation.

Defendant further points to a text message exchange between Mr. Colbert and Defendant attached to her motion to withdraw her guilty plea as evidence of Mr. Colbert's promise that she would not face incarceration. In the text message, Defendant asked Mr. Colbert on the day of her guilty plea if she was going to jail, and Mr. Colbert responded, "No jail today. But I can make that happen." Defendant also claims that the guilty plea form was already filled in when she met with Mr. Colbert in June 2022, and "[s]he was advised at this meeting that pleading guilty was the best way to avoid jail time."

In its brief, the State argues Defendant's sentencing exposure was greatly reduced due to Mr. Colbert's efforts that resulted in the dismissal of five charges of cruelty to juveniles. The State points out that Defendant testified at her *Boykin* hearing that she was satisfied with Mr. Colbert's representation, that she had a chance to adequately discuss her case with him, and that she was present when he said he had received open file discovery.

In arguing that Defendant's plea was knowingly and intelligently entered, the State relies on *State v. Morris*, 43,059, pp. 5–6 (La.App. 2 Cir. 4/30/08), 982 So.2d 245, 249–50, which found:

> In this case, the defendant argues he was induced to plead guilty by the belief that he would receive the minimum sentence, as long as the PSI showed that he did not have a prior felony drug conviction. The defendant asserts that the terms of the bargain were violated when the court sentenced him to more than the minimum (two years) mandated by statute.
>
> We find that the record does not support the defendant's claim that his guilty plea was involuntary. The trial court clearly explained to the defendant that the penalty for possession with intent to distribute was imprisonment at hard labor, for not less than two years and not

14

more than thirty, the first two of which had to be served without the benefit of probation, parole or suspension of sentence. When the court asked the defendant if he understood the penalty exposure, the defendant replied, "Yes, sir." When asked if he was promised anything in exchange for the plea, defense counsel explained that he had discussed with the defendant how the PSI could impact his sentencing and that if it showed no "severe" or felony drug convictions, the minimum sentence would be an option for the trial court to impose. After this exchange, the trial court repeatedly asked the defendant whether he understood that, in spite of what the PSI might reveal, there were no guarantees with regard to his sentence. The defendant indicated that he understood by replying, "Yes, sir." Furthermore, the only substantive statement by the defendant during this questioning was during the court's explanation that there were no sentencing guarantees. In response, the defendant stated, "Long as it comes back I ain't got no drug record, criminal record."

The defendant's statement indicates that he believed the minimum sentence would be imposed in the absence of a drug and criminal record. Given that the defendant had both a prior drug conviction and an extensive criminal record, the trial court's failure to impose the minimum sentence does not run afoul of the defendant's alleged understanding. There is no indication in the record that defendant's attorney, the prosecutor or the trial court advised the defendant that he would receive a two-year sentence in exchange for a guilty plea, regardless of whether he had prior felony drug convictions. Under these circumstances, we find that the defendant was not justified in believing that such a plea bargain existed.

The State argues that, as in *Morris*, the trial court in the instant case explained the minimum and maximum sentence Defendant could receive and told Defendant a PSI would be ordered because her plea was open-ended without a sentencing recommendation or sentencing cap. Regarding the text message conversation, the State contends that Mr. Colbert's response was correct; Defendant was not going to jail on the day of her guilty plea because sentencing was going to be held at a later date after a PSI was conducted.

In *State v. Hidalgo*, 96-403 (La.App. 3 Cir. 11/6/96), 684 So.2d 26, the defendant claimed that his defense counsel fraudulently assured him and another attorney that he was going to receive a suspended sentence. At a *Boykin* hearing,

the trial court asked the defendant if any promises had been made, other than an agreement to pay a fine rather than having a vehicle forfeited, to induce him to plead guilty and the defendant stated that no additional promises had been made. The trial court ordered a presentence investigation report and allowed the defendant to present mitigating evidence. He was sentenced to ten years at hard labor, with all but two and one-half years suspended, and he was placed on probation subject to conditions. The defendant later filed a motion to withdraw his guilty plea on the basis that he was induced to plead guilty not merely by a simple misunderstanding with his defense attorney, but by defense counsel's fraudulent misrepresentation throughout the *Boykinization* process that led him to believe the colloquy was a mere formality. On appeal, this court determined that the trial court did not err in rejecting the defendant's claims. The determination of whether the conduct of defense counsel constitutes fraudulent misrepresentation sufficient to invalidate a guilty plea is based upon weighing the credibility of the witnesses against the remaining evidence, and the fact finder's determinations will not be second-guessed.

In the present case, Defendant was clearly informed of the maximum penalty for cruelty to juveniles, that she could be subject to that maximum penalty, and that the State was not making any recommendations as to the sentence she could receive. Defendant pled guilty to the charges while knowing that a PSI had been ordered and that the trial court would consider the PSI when determining her sentences. If Defendant misunderstood her plea agreement and thought she would receive probation, Defendant has failed to demonstrate that either the State or the trial court induced her misunderstanding. *See State v. Knight*, 54,236, 54,237, (La.App. 2 Cir. 3/9/22), 335 So.3d 502, *writ denied*, 22-764 (La. 9/7/22), 345 So.3d 426. Further, Defendant has failed to prove that Mr. Colbert engaged in fraud, intimidation, or was

16

incompetent as to render her guilty pleas involuntary or uninformed. The trial court chose to believe the testimony of Mr. Colbert over the Defendant's and her family members', and determined that there was no credible evidence that established her guilty pleas were the result of promises concerning a probated sentence. *See State v. Walton*, 98-1433 (La.App. 3 Cir. 3/24/99), 738 So.2d 36, *writ denied*, 99-1195 (La. 10/1/99), 748 So.2d 434. Under these circumstances, this court finds that Defendant was not justified in believing that such a plea bargain existed. *See Morris*, 982 So.2d 245.

We next address whether counsel was ineffective for laboring under an actual conflict of interest, which Defendant claims resulted in an involuntary guilty plea. Louisiana Code of Criminal Procedure Article 517(A) provides:

> Whenever two or more defendants have been jointly charged in a single indictment or have moved to consolidate their indictments for a joint trial, and are represented by the same retained or appointed counsel or by retained or appointed counsel who are associated in the practice of law, the court shall inquire with respect to such joint representation and shall advise each defendant on the record of his right to separate representation.

Initially, we note that Defendant was charged individually, not with the other co-participants, and the co-participants' cases were not consolidated for trial.

> As a general rule, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant whom he is representing. *State v. Cisco*, 2001–2732 p. 17 (La.12/3/03), 861 So.2d 118, 129, *cert. denied*, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004). An actual conflict of interest has been defined, as follows:
>
> > If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take

17

some action that could be detrimental to the other client.

The issue of conflicting loyalties may arise in several different contexts, but may include the circumstance "where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney." *Cisco*, 2001–2732 p. 17, 861 So.2d at 129, *citing State v. Tart*, 1993–0772 p. 19 (La. 2/9/96), 672 So.2d 116, 125, *cert. denied*, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).

If the issue of counsel's alleged conflict of interest is raised in a pretrial setting, the district court has two options: "appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. . . . Failure to do one or the other in a case in which an actual conflict exists requires reversal." *Cisco*, 2001–2732 p. 17, 861 So.2d at 130. If the issue of counsel's alleged conflict of interest is not raised until after trial, "the defendant must prove that an actual conflict of interest adversely affected his lawyer's performance." *State v. Kahey*, 436 So.2d 475, 484 (La.1983). Because the prejudice to the defendant may be subtle, even unconscious, "where the conflict is real, a denial of effective representation exists without a showing of specific prejudice." *Id.,* 436 So.2d at 485.

The first step in the analysis of an alleged conflict of interest raised either pretrial or post-trial is whether an actual conflict of interest existed.

*State v. Reeves*, 06–2419, pp. 78–79 (La. 5/5/09), 11 So.3d 1031, 1081–82, *cert. denied*, 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009) (footnotes omitted).

*State v. Scott*, 16-479, pp. 3–4 (La.App. 3 Cir. 12/28/16), 209 So.3d 888, 890.

Additionally, the first circuit has said there must be specific instances in the record proving counsel's performance was adversely impacted:

In assessing whether a conflict of interest exists, a court must be convinced that the conflict is actual, not merely hypothetical or speculative. Actual conflicts of interest that adversely affect counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict. *State v. Lobato,* 621 So.2d 103, 105 (La.App.2d

18

Cir.1993), *writ granted in part and denied in part,* 627 So.2d 644 (La.1993). *See State v. Franklin,* 400 So.2d 616, 620 (La.1981). An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. *State v. Kahey,* 436 So.2d 475, 484 (La.1983). The mere fact that the evidence against one codefendant is stronger than that against the other does not indicate, much less demonstrate, the existence of a conflict of interest between the defendants. *State v. Edwards,* 430 So.2d 60, 62 (La.1983). Nor is the mere allegation that one codefendant intends to point an accusing finger at the other codefendant sufficient to support a claim of actual conflict of interest. *Kahey,* 436 So.2d at 485. Faced with a case in which the evidence is stronger against one defendant than against the other, the attorney representing the defendant for which the state has the least evidence might want to bring the comparison of the evidence to the attention of the jury; but, if the same attorney were to represent the defendant for which the state has stronger evidence, a conflict would exist. However, strategic advantages can result from joint representation. A common defense often gives strength against a common attack. Additionally, joint representation can insure against reciprocal recrimination, such as might occur if either Reyes or Castaneda, or both, decided to testify against the other in an effort to reduce either the charge or the sentence. *See Holloway,* 435 U.S. at 482-83, 98 S.Ct. at 1178; W. LaFave & J. Israel, Criminal Procedure § 11.9, p. 77 (1984).

*State v. Castaneda*, 94-1118, pp. 12–13 (La.App. 1 Cir. 6/23/95), 658 So.2d 297, 305–06. The first circuit concluded that Castaneda did not prove his counsel was faced with a situation where he had to choose between the interests of Castaneda and his other client, Castaneda's co-defendant. Both had an interest in pleading guilty. The first circuit noted that if Castaneda "desire[d] to expand upon his claim of conflict of interest and prove his allegations, his proper remedy is by post-conviction relief, wherein an evidentiary hearing could be conducted." *Id*. at 306 (citation omitted).

The conflict of interest issue was not discussed at the hearing on Defendant's motion to withdraw her guilty plea. According to the record, Defendant was aware that Mr. Colbert would be representing at least one of the co-participants prior to pleading guilty. Courts often relegate conflict of counsel issues to post-conviction

19

relief when the record is insufficient to address the issue. *See State v. M.M.*, 00-1296 (La.App. 3 Cir. 8/29/01), 802 So.2d 43, *writ denied,* 01-3370 (La. 10/4/02), 826 So.2d 1121; *State v. Griffin,* 02-1341 (La.App. 3 Cir. 3/5/03), 839 So.2d 1148; *State v. Anderson,* 29,282 (La.App. 2 Cir. 6/18/97), 697 So.2d 651.

Based on the record before this court, we conclude that the matter should be relegated to post-conviction relief, wherein an evidentiary hearing may be held to determine additional facts concerning Defendant's allegation of conflict of interest.

*Ineffective Assistance of Counsel - Sentences*

In her remaining assignments of error, Defendant presents various arguments related to her sentences. She claims that she received ineffective assistance of counsel at sentencing due to counsel's failure to present mitigating evidence and failure to resolve the conflict of interest, citing *State v. Harris*, 18-1012 (La. 7/9/20), 340 So.3d 845. She further claims that her sentences are constitutionally excessive. However, Defendant's arguments are pretermitted by the error patent discussed above, which requires her sentences to be vacated and the case remanded for resentencing.

Nevertheless, there is an additional issue to consider related to Defendant's arguments. In conjunction with Defendant's argument that her sentences must be vacated due to a finding of ineffective assistance of counsel and/or that her sentences are excessive, Defendant requests that this court remand her case "to a different trial judge in accordance with La. C.Cr.P. art. 881.4(B)."

An appellate court has the authority to remand for resentencing before a different judge:

> A. If the appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentence by the trial court.

20

The appellate court may give direction to the trial court concerning the proper sentence to impose.

     B. In the interest of justice, the appellate court may remand the case for resentencing before a judge other than the judge who imposed the initial sentence.

     C. If necessary to an appropriate disposition of a motion to reconsider sentence, the appellate court may remand the case to the trial court with instructions to supplement the record or to hold an evidentiary hearing.

     D. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.

La.Code Crim.P. art. 881.4.

In *State v. Ste. Marie*, 01-1253 (La.App. 3 Cir. 4/10/02), 824 So.2d 358, *writ denied*, 02-1117 (La. 12/19/02), 835 So.2d 1288, this court remanded a case for resentencing before a different trial judge after the original trial judge had refused to follow this court's prior instructions upon initial remand of the case for resentencing. This court discussed the issue as follows:

> Despite this court's *specific* instruction to impose concurrent sentences, the trial court imposed its own judgment and flouted the order of this court. That is intolerable. . . .
>
>    . . . .
>
> Faced with a similar situation, the fourth circuit in *State v. Donaldson*, 98-1015 (La.App. 4 Cir. 1/6/99), 726 So.2d 1003, remanded the case to a different section of the district court for resentencing. The court stated, "Therefore, because the trial court in Section B refuses to reconsider the defendant's sentence in the terms suggested by the Supreme Court and then by this Court, the case is to be remanded to a different section of Criminal District Court when the defendant is resentenced as a multiple offender. La.C.Cr.P. art. 881.4(B)." *Id.* at 1005. The supreme court reversed the fourth circuit's decision on another ground but affirmed the court's remand of the case for sentencing before another judge. *State v. Donaldson*, 99-369 (La. 9/3/99), 740 So.2d 103. Likewise, we remand the present case to a different division of the district court for resentencing to concurrent sentences as instructed by this court in *State v. Ste. Marie*, 97-168 (La.App. 3 Cir. 4/18/01), 801 So.2d 424.

*Id.* at 359–60.

However, in *State v. Richard*, 99-1078 (La.App. 3 Cir. 12/27/00), 779 So.2d 927, this court denied a request for resentencing to be assigned to a different trial judge. The defendant argued that the trial judge was vindictive towards him. Quoting La.Code Crim.P. art. 881.4(B)'s requirement that an appellate court may remand the case to a different trial judge "in the interest of justice," this court stated:

> However, "in the interest of justice," we have found no reason in the record to warrant a change. Specifically, Mr. Richard has failed to show any vindictiveness or retaliatory motive on the trial court's part. Furthermore, we found no cases on point and note that the jurisprudence on this provision is rather limited. In the case law, 881.4(B) has been employed when trial courts failed or refused to comply with higher courts' orders regarding re-sentencing. The present case presents no such situation.

*Id.* at 935–36.

Recently, in *State v. Duhon*, 20-513 (La.App. 3 Cir. 5/26/21), 322 So.3d 326, this court denied the defendant's request for his case to be remanded to another trial judge for his resentencing. This court discussed *Ste. Marie*, 824 So.2d 358, and *Richard*, 779 So.2d 927, and other jurisprudence, before concluding that the circumstances did not warrant the assignment of a different trial judge:

> In the case cited by appellate counsel, *State v. Dondis*, 488 So.2d 454, 457 (La.App. 3 Cir. 1986), this court remanded for resentencing before a different judge because it felt the trial court's comments at resentencing indicated "a lack of individualization or particularization of the sentence imposed on [the] defendant." This court noted that although the trial judge read letters written on Dondis's behalf, the trial judge may not have given them proper consideration considering the trial judge's concern that the letters were an attempt to "exert pressure" upon him. *Id.* at 456. Additionally, this court noted that the trial judge apparently believed the district attorney had shown favoritism to Dondis. *Id.*
>
> *Dondis* cited two cases in which such relief had been granted; *State v. Soco*, 441 So.2d 719 (La.1983); and *State v. Jones*, 473 So.2d 917 (La.App. 3 Cir. 1985). In *Soco*, the supreme court remanded the

22

case for resentencing before another judge without specifying its reasons for doing so. The supreme court seemed to be concerned, however, that the original sentencing judge imposed the maximum sentence without consideration of the proper factors. The judge failed to state that it had considered the factors set forth in La.Code Crim.P. art. 894.1 and evidently failed to consider Soco's lack of criminal history. *Soco*, 441 So.2d 719. The only consideration recited by the trial court was Soco's commission of perjury, which the supreme court found was not necessarily a relevant factor for determining the proper sentence and was certainly not sufficient to justify the maximum sentence. *Id.*

In *Jones*, 473 So.2d 917, this court issued a separate per curiam opinion addressing the defendant's request in a rehearing application that his case be assigned to another judge for resentencing. In the original opinion, this court remanded for resentencing because the sentencing judge made unwarranted assumptions in imposing the sentence. *State v. Jones*, 473 So.2d 66 (La.App. 3 Cir. 1985). Those assumptions, this court stated, were that Jones made drug sales other than the ones to which he pled guilty, and that Jones would receive assistance from family members to pay his fines. *Id.* Granting Jones's request for another judge to resentence him, this court noted that the same judge had already sentenced Jones twice and noted that the supreme court had granted such relief in *Soco*. *Jones*, 473 So.2d 917.

*Duhon*, 322 So.3d at 334–35 (alteration in original).

The jurisprudence discussing La.Code Crim.P. art. 881.4(B) shows that appellate courts have granted a defendant's request to remand for resentencing before a different trial judge when the trial judge has failed or refused to comply with an appellate court's orders regarding resentencing. That has not occurred in the instant case, and Defendant has not presented any reasons for her request other than her arguments that she received ineffective assistance of counsel at sentencing and that the trial judge imposed excessive sentences. Thus, Defendant has not satisfied the "interest of justice" requirement in La.Code Crim.P. art. 881.4, and her request is denied.

23

## DECREE

For the reasons set forth above, Defendant's convictions are affirmed. However, Defendant's sentences are hereby vacated, and we remand the matter to the trial court for resentencing.

**CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.